## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THE NEW GEORGIA PROJECT, *et al.*,

     Plaintiffs,

v.

BRAD RAFFENSPERGER, in his
official capacity as the Georgia
Secretary of State and the Chair of the
Georgia State Election Board, *et al.*,

     Defendants.

Civil Action File No.

1:20-cv-01986-ELR

## STATE DEFENDANTS' MOTION TO
## DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants Brad Raffensperger, in his official capacity as Secretary of State and the Chair of the Georgia State Election Board (the "Secretary"), State Election Board Members Rebecca N. Sullivan, David J. Worley, Anh Le, and Matthew Mashburn (collectively, the "State Defendants"), by and through their undersigned counsel, file this Motion to Dismiss Plaintiffs' Amended Complaint. The Amended Complaint must be dismissed because Plaintiffs lack standing and their allegations fail to state any claim for relief.

1.    Plaintiffs lack standing. Plaintiffs challenge five aspects of Georgia election law: (1) the statute governing incomplete absentee ballot request forms, O.C.G.A. § 21-2-384(b)(4) (the "Absentee Applicant Notification

Statute"); (2) the statute allowing elderly, disabled, and Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") voters to request absentee ballots for an entire election cycle, O.C.G.A. § 21-2-381(a)(1)(G); (3) the United States Postal Service's ("USPS's") policy of requiring postage to deliver mail (but not official election mail); (4) the statutory requirement that absentee ballots be delivered to a county election official by 7:00 p.m. on Election Day, O.C.G.A. § 21-2-386(a)(1)(F); and (5) Georgia's statutory prohibition on third party ballot harvesting (e.g., allowing third parties to collect and return absentee ballots from voters), O.C.G.A. § 21-2-385(a) (the "Absentee Ballot Security Statute") (collectively, the "Challenged Policies"). [Doc. 33, ¶¶ 130-38.]

To satisfy constitutional standing requirements, each Plaintiff must clearly show that each of the Challenged Policies causes them a cognizable injury. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Each plaintiff must show that it is likely, not merely speculative, that a favorable judgment will redress her injury." Lewis v. Governor of Ala., 944 F.3d 1287, 1296 (11th Cir. 2019) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations and punctuation omitted))

The Amended Complaint satisfies neither the injury nor redressability requirements. On injury, there is no allegation that the individual Plaintiffs:

cannot vote without assistance; have had an absentee ballot request rejected; cannot obtain stamps; cannot access a mail box to take advantage of USPS policy to mail official election mail without sufficient postage; are precluded from requesting an absentee ballot, voting with the absentee ballot, or curing any deficiency in the absentee ballot process by voting in person. [See Doc. 33, ¶¶ 20-22.]  No individual plaintiff alleges she is being deprived of the right to vote.

Plaintiff NGP's claim of associational standing based on a diversion of resources from its missions of registering and encouraging voters to vote to its mission of registering and encouraging voters to vote falls short of establishing a cognizable injury. [Id. at ¶¶ 17-19.]  Spokeo, Inc., 136 S. Ct. at 1547; Lujan, 504 U.S. at 561; Jacobson v. Fla. Sec'y of State, No. 19-14552 at 21-22 (11th Cir. April 29, 2020); Ga. Republican Party v. SEC, 888 F.3d 1198, 1203 (11th Cir. 2018) (citation omitted). NGP has neither identified a single member nor alleged any specific harm.  For NGP, the 2020 election will be no different than any other for the organization: it will seek to register voters and encourage them to vote. [Doc. 33, ¶ 18.]

2. Count I of Plaintiffs' Amended Complaint does not state a claim for relief.  To survive a motion to dismiss, Plaintiffs must identify a burden that the challenged law imposes on voting. Crawford v. Marion Cty. Election Bd.,

553 U.S. 181, 205 (2008) (Scalia, J., concurring in judgment).  None of the Challenged Policies impose an unconstitutional burden on the Plaintiffs, and to the extent they impose any burdens, sufficient state interests foreclose Plaintiffs' claims.

3.    None of Plaintiffs' claims attacking Georgia's Absentee Applicant Notification Statute under the First and Fourteenth Amendments to the Constitution and procedural due process and equal protection grounds state a claim for relief.  Plaintiffs have alleged no burden on themselves under O.C.G.A. § 21-2-381(b)(4), however, but merely hypothesize a potential one for unidentified third parties. Their claims can be dismissed on this point alone.

The lack of an as-applied injury renders Plaintiffs' claim a facial challenge, which requires them to "'establish that no set of circumstances exists under which the [law] would be valid.'" J.R. v. Hansen, 803 F. 3d 1315, 1320 (11th Cir. 2015) (Hansen II) (citation omitted); see also Wash. State Grange v. Wash. State Republican Party, 552, U.S. 442, 449 (2008).

The Absentee Applicant Notification Statute easily survives a facial challenge. First, the law can be implemented in a constitutional manner because a county election office could, conceivably, notify a voter of an issue

in time for the voter to cure the problem. <u>Worley v. Fla. Sec'y of State</u>, 717 F.3d 1238, 1250 (11th Cir. 2013).

Second, the statute provides sufficient protections. Counties are not "at liberty to notify voters they are unable to process their absentee applications at their leisure," [Doc. 33, ¶41]; instead, they must do so "promptly." O.C.G.A. § 21-2-384(b)(4).

Third, "there is no fundamental right to vote by absentee ballot," <u>Friedman v. Snipes</u>, 345 F. Supp.2d 1356, 1370 (S.D. Fla. 2004) (citing <u>McDonald v. Bd. of Election Comm'rs of Chicago</u>, 394 U.S. 802, 807 (1969)), much less any fundamental right to request an absentee ballot. State Defendants cannot unlawfully burden an illusory right. <u>Cf.</u> <u>McDonald</u>, 394 U.S. at 807-808 (applying Equal Protection analysis).

Fourth, in the alternative, any purported burden caused by an absentee ballot request is minute.

Finally, any purported burden is "justified by relevant and legitimate state interests." <u>Common Cause/Georgia v. Billups</u>, 554 F.3d 1340, 1352 (11th Cir. 2009). The State has an interest in not only preventing fraud and verifying the eligibility of voters, but also in permitting flexibility to county election officials to do their jobs without unreasonable and unnecessary interference or arbitrary deadlines.

Plaintiffs' procedural due process claim also is a facial challenge to the Absentee Applicant Notification Statute, because Plaintiffs fail to identify a single voter to whom the challenged statute has been unconstitutionally applied.  Count IV should be dismissed because Plaintiffs cannot show that the Absentee Applicant Notification Statute always deprives voters of a "constitutionally-protected liberty interest or property interest," and always involves a "constitutionally inadequate process" to remedy that injury. Doe v. Fla. Bar, 630 F.3d 1336, 1342 (11th Cir. 2011); see also Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Again, Plaintiffs have no constitutional interest in voting absentee. Zessar v. Helander, No. 05 C 1917, 2006 WL 642646, at *6 (N.D. Ill. Mar. 13, 2006) (citing McDonald, 394 U.S. at 807). In addition, under the Mathews analysis, the risk of erroneous deprivation is not high, as Plaintiffs have not shown a single instance of erroneous deprivation let alone a high risk of it. Further, the statute provides procedures to minimize erroneous deprivation. As Plaintiffs acknowledge, [Doc. 33, ¶ 39], under O.C.G.A. § 21-2-381(b)(4), any individual whose identity is not confirmable from the application information is given both notice and opportunity to cure the problem. Finally, Plaintiffs fail to articulate any straightforward additional or substitute procedural safeguards, which is fatal to their facial challenge.

Plaintiffs also assert that Georgia's Absentee Applicant Notification Statute violates the Equal Protection Clause of the Fourteenth Amendment. [Doc. 33, ¶ 165].  Plaintiffs' Equal Protection challenge is facial, and because O.C.G.A. § 21-2-381 (b)(4) is facially neutral, Plaintiffs must allege facts showing discriminatory intent. See Democratic Exec. Comm. of Fla. v. Lee, 915 F.3d 1312, 1319 n.9 (11th Cir. 2019) (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977)). Plaintiffs fail to do so, which warrants dismissal.  Plaintiffs' reliance on Bush v. Gore, 531 U.S. 98, 104–105, 109 (2000), which was expressly confined to its facts, is misplaced. The instant case is not about counting votes but the methods by which a voter may request an absentee ballot.

4.     With Counts I and II, Plaintiffs ask the Court to strike a state law allowing some voters to make a single request for absentee ballots for each election cycle under Anderson-Burdick and 26th Amendment theories.

Plaintiffs assert that the State unconstitutionally burdens voters because only those who are age 65 or older, disabled, or subject to UOCAVA may submit a single request for an absentee ballot that covers all elections in a cycle. The purported burden is not on the vote itself but instead on the means of requesting an absentee ballot before Election Day. This is not actionable. McDonald, 394 U.S. at 807-08.

The alleged harm of this policy is purely hypothetical.  Plaintiffs identified no one who has been denied the right to vote because of this law, nor have they alleged that the two Individual Plaintiffs under age 65 are incapable of making multiple requests. [Id., ¶¶ 21-22.]

Even if the risks were a burden on voting, the challenged statute is based on an important or compelling state interest. First, there is a strong interest in helping the most vulnerable. Second, the risk of fraud is reduced when unused absentee ballots are not floating throughout the State. See Billups, 554 F.3d at 1352, (describing anti-fraud efforts as "relevant and legitimate.").

Finally, a host of rational reasons support the law. For example, younger people tend to move more frequently than older Americans, meaning absentee ballots issued for an entire election cycle may be mailed to an address where the voter no longer resides or receives mail. This alone is sufficient to uphold the law.

Count II alleges a violation of the 26th Amendment to the United States Constitution. [Doc. 33, ¶¶ 139-46.] The only federal appellate court to have addressed this issue squarely rejected Plaintiffs' theory. See Texas Democratic Party v. Abbott, No. 20-50407, 2020 WL 2982937 at *14 (5th Cir. June 4, 2020). This Court should as well.  By its terms, the 26th Amendment

prohibits only those state laws that "den[y] or abridge[]" the right to vote. The challenged statute does not "deny or abridge" anyone's right or opportunity to vote. See id.  As discussed above and in the accompanying brief, numerous rationales support the law.

5.     Plaintiffs identify no Georgia statute or policy that requires voters to place a stamp on an absentee ballot request or absentee ballot envelope but nevertheless raise Anderson-Burdick (Count I) and 24th Amendment (Count III) claims to compel Georgia taxpayers to pay all postage associated with absentee ballot requests and absentee ballots. [Doc. 33, ¶¶ 133-34, 147-50.]

The clearest reason to dismiss Count III is that no state statute or regulation raises revenue through absentee voting.  A tax is imposed by a government to raise money for itself. Postage is not a requirement imposed by the State, nor does it flow to State coffers.  Georgia does not require payment of anything to request or return an absentee ballot, and nothing flows to the State's treasury. See O.C.G.A. §§ 21-2-216(a), 21-2-381, and 21-2-385.

Georgia's policy does not burden Plaintiffs. The Individual Plaintiffs have not alleged that they cannot obtain stamps. Thus, any burden they face would be "incidental" and not actionable under federal law. See Ind. Democratic Party v. Rokita, 458 F. Supp. 2d 775, 827 (S.D. Ind. 2006), aff'd

sub nom. <u>Crawford v. Marion Cty. Election Bd.</u>, 472 F.3d 949 (7th Cir. 2007),

aff'd, 553 U.S. 181 (2008) (quoting <u>Burdick v. Takushi</u>, 504 U.S. 428, 433

(1992)).  Plaintiffs admit the "burden" of acquiring postage is a "practical"

one.  [Doc. 33, ¶ 133.] Plaintiffs' reliance on COVID-19 does not save their

facial claim.  The Amended Complaint alleges that the virus may make it

difficult for some to vote in November, but such concerns are speculative and

do not show an injury.  In addition, Plaintiffs have not alleged that they are

unable to take basic precautions such as wearing a mask and washing their

hands before and after voting.

Plaintiffs cannot show their alleged harm (purchasing a stamp) is

caused by the State, which is fatal to their claims. The USPS, not the State of

Georgia, imposes postal fees, and only the USPS benefits from those fees. 39

U.S.C. §§ 3622(c)(2); 101(d); 404(b).

6.    Plaintiffs allege that requiring receipt of absentee ballots by the close of

polls on Election Day violates procedural due process (Count IV) and imposes

an unconstitutional burden (Count I). Both claims should be dismissed.

Plaintiffs fail to show the deprivation of a constitutionally protected

interest because there is no federal constitutional right to vote by absentee

ballot.  Plaintiffs also fail to establish a constitutionally inadequate process.

Here, the risk of erroneous deprivation is low, and Plaintiffs identify only

speculative concerns. [Doc. 33, at ¶¶22, 50, 63, 70, 71, 109, 112.]  Nor do Plaintiffs articulate any meaningful additional procedural safeguards.

Extending the deadline would impose a heavy burden on the State, however, and frustrate the State's strong interests in conducting an efficient election. <u>Green Party of Georgia v. Kemp</u>, 106 F. Supp. 3d 1314, 1319 (N.D. Ga. 2015).  Timely certification of election results also promotes the important state interest of certainty in elections. <u>Broughton v. Douglas Cty. Bd. of Elections</u>, 286 Ga. 528, 528–29 (2010).  Finally, requiring absentee ballots to be delivered before unofficial results begin to be publicized cuts down on the potential of voter fraud, which is an important state interest and "eliminates the problem of missing, unclear, or even altered postmarks." <u>See Nielsen v. DeSantis</u>, 4:20cv236-RH-MJF (N.D. Fla. June 24, 2020).

Just as there is not a fundamental right to vote by absentee ballot, making certain that an absentee ballot is returned by election day is not a burden on voting under <u>Anderson-Burdick</u>.  Plaintiffs' claim that they must "accurately guess" when to mail their ballot for the county to receive it by the close of the polls on Election Day is not actionable. [Doc. 33, ¶ 135.] "It is reasonable to expect a voter, who is voting by absentee ballot, no matter the reason, to familiarize themselves with the rules governing that procedure— especially when those procedures are provided." <u>Thomas v. Andino</u>, No. 3:20-

cv-1552, 2020 WL 2617329, at *25 n.25. (D.S.C. May 25, 2020). Plaintiffs' alleged injury that voting early deprives them of late-breaking information is equally meritless. [Doc. 33, ¶ 136.] Voters choose to vote early and therefore choose to vote with the information they have at the time.  Third, Plaintiffs claim that increases in mail absentee ballots coupled with "unreliable mail service" caused by a budget crisis at USPS and COVID-19 will lead to delays in mail delivery. [Id. at ¶ 112.]  Neither of these factors are acts of the State. Moreover, Plaintiffs' requested relief is arbitrary. They do not maintain that five additional business days will be sufficient to ensure absentee ballots are timely returned, further warranting dismissal of this claim.

Finally, the State has strong interests in the current deadlines. Requiring absentee ballots to arrive by the close of the polls on Election Day protects against fraud and allows county election officials to timely complete the ballot-counting process before the certification deadline.

7.  Counts I and VI of Plaintiffs' Amended Complaint seek to strike, as facially unconstitutional, the Absentee Ballot Security Statute, which limits the types of persons who may "mail[] or deliver[]" absentee ballots for voters. O.C.G.A. § 21-2-385(a); [Doc. 33, ¶¶ 126-38, 167-72.] Count VII claims the same statute violates the Voting Rights Act. [Id. at ¶¶ 173-80.] Each facial challenge fails as a matter of law.

Georgia law does not require voters to personally mail or deliver their absentee ballot to a county election office. O.C.G.A. § 21-2-395(a); Ga. Comp. R. & Regs. r. 183-1-14-0.6-.14. Instead, any voter may also rely on an array of family members or a roommate to deliver or mail the ballot. Id. Voters in particular circumstances may also rely on "caregiver[s]" or employees of the jail or detention center to deliver their ballots, regardless of whether such person lives with the voter. Id. Further, voters confined to a hospital on Election Day can have a registrar or absentee ballot clerk personally deliver and return their absentee ballots. Id.

None of the individual Plaintiffs allege that they are unable to vote without assistance. [Doc. 33, ¶¶ 20-22.]  NGP, however, seeks to (1) "collect[] and deliver[] completed, signed, and sealed absentee ballots," [id. at ¶ 19]; and (2) make sure that voters "prepared the ballot and envelope correctly." [Id. at ¶ 21.] Plaintiffs also allege that "over 64,000 Georgians" live alone and do not have caregivers but fail to allege that those voters lack family members or a nearby mailbox. [Id. at 39]. Plaintiffs also claim that "27.2% of adults in Georgia who have a disability," and that about "one-tenth" of disabled people nationwide say they need assistance in voting. [Id. at ¶¶ 74-75 (emphasis added).] But, Plaintiffs ignore (and do not challenge) O.C.G.A. § 21-2-385(b), which allows disabled voters to "receive assistance in preparing

his or her ballot from any person of the elector's choice."  These allegations

fail to state a claim under First Amendment and Anderson-Burdick theories.

The Supreme Court rejected "the view that an apparently limitless

variety of conduct can be labeled 'speech' whenever the person engaging in

the conduct intends thereby to express an idea." United States v. O'Brien,

391 U.S. 367, 375 (1968). By this standard, O.C.G.A. § 21-2-385(a) falls

outside of these recognized limitations because it does not regulate speech.

The statute only prohibits NGP from taking a ballot from a voter and deliver

or mail it, which does not involve speech or impinge on the right of anyone to

associate with NGP.

Even if this Court decided that the physical act of delivering an

absentee ballot to a county election office or mailbox constitutes speech, that

speech is, at best, incidental. Consequently, the Absentee Ballot Security

Statute must be upheld if there is an "important governmental interest" to

justify the regulation. O'Brien, 391 U.S. at 376.  There are numerous,

important reasons that justify the law, including protection against voter

fraud, promoting voter confidence, and the orderly administration of the

election process. See Burdick 504 U.S. at 433.  And, recent examples of

absentee voter fraud prove that the Supreme Court was correct to distinguish

between pre-election speech and gathering completed ballots.

Plaintiffs have no burden. To the extent that any burden exists, it is slight and insufficient to overcome important government interests, which is fatal to Plaintiffs' <u>Anderson-Burdick</u> claim (Count I).

Plaintiffs' Voting Rights Act ("VRA") claim fails because Plaintiffs overlooked Georgia law that is directly on point and consistent with the VRA. Specifically, Plaintiffs allege that the restrictions on assisting voters with their absentee ballots violates Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508.  Georgia law expressly addresses this in the same statute that Plaintiffs cite. O.C.G.A. § 21-2-385(b) provides that "[a] physically disabled or illiterate elector may receive assistance in preparing his or her ballot from any person of the elector's choice other than such elector's employer or the agent of such employer or an officer or agent of such elector's union . . . ."  O.C.G.A. § 21-2-385(b).  This addresses each of the criteria set forth in section 208 of the VRA and shows that Plaintiffs' Count VII must be dismissed.

In consideration of the foregoing, and as more fully set forth in the attached memorandum, State Defendants respectfully ask the Court to dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice, as to State Defendants and grant State Defendants such other relief as the Court deems just and proper.

Respectfully submitted this 26th day of June, 2020.

/s/ Josh Belinfante
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Carey Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Brian Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
**Robbin Ross Alloy Belinfante
Littlefield LLC**
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250

Christopher M. Carr
Attorney General
GA Bar No. 112505
Brian K. Webb
Deputy Attorney General
GA Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
**State Law Department**

40 Capitol Square, S.W.
Atlanta, Georgia 30334

*Attorneys for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED

COMPLAINT was prepared double-spaced in 13-point Century Schoolbook

font, approved by the Court in Local Rule 5.1(C).

*/s/Josh*
*Belinfante*
Josh Belinfante