# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

THE NEW GEORGIA PROJECT,
*et al.,*

     *Plaintiffs,*

v.

BRAD RAFFENSPERGER, in his
official capacity as the Georgia
Secretary of State and Chair of the
Georgia State Election Board, *et al.,*

     *Defendants.*

CIVIL ACTION FILE
NO. 1:20-cv-01986-ELR

## COUNTY DEFENDANTS'[1] CONSOLIDATED BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

The day after the General Primary election on June 9th, Plaintiffs filed
hundreds of pages of exhibits (including epidemiological studies and several
tweets), seeking a preliminary injunction to judicially impose five new
changes to longstanding Georgia processes and statutes for running elections.
[Docs. 57, 58, 59] (collectively, "Plaintiffs' Motion"). While Plaintiffs dress
their motion in the garb of the pandemic, they have not acted with reasonable
diligence to raise these issues to the Court and the relief they propose would

---

[1] A list of all County Defendants is included as an appendix to this filing.

place incredible burdens on county officials already working to operate elections in challenging circumstances.

County Defendants take no position on the constitutionality of the statutes and practices Plaintiffs challenge, but this Court should deny Plaintiffs' Motion. As County Defendants earlier explained in their Motion to Dismiss, this Court lacks jurisdiction to hear Plaintiffs' claims. But even setting aside the jurisdictional infirmities, Plaintiffs have shown no basis for this Court to grant their requested relief. Instead, Plaintiffs seek to throw the upcoming election into procedural chaos by asking the Court to serve as a legislative and administrative proxy for their own political agenda. This Court should reject Plaintiffs' request for relief because it lacks support in law, subverts the public interest, and produces inequitable results.

## FACTUAL BACKGROUND

Plaintiffs pursue this case in the midst of a national political debate over the proper method of voting. While this topic is appropriate for policy-making officials to resolve, it is inappropriate for this Court to intervene prematurely because Plaintiffs dislike the speed or outcome of the political process. Although Plaintiffs submitted what purports to be voluminous "support" for their positions, that "support" sorely lacks the actual substance necessary to obtain the broad-sweeping injunctive relief they seek.

# I.    Notification to voters regarding incomplete absentee-ballot applications.

Plaintiffs first claim that there are no uniform standards governing when counties provide notice to voters when an absentee-ballot application is rejected. [Doc. 58, p. 25[2]]. But the sole evidence offered in support of that theory is their purported expert, Dr. Mayer, who only opines that it is "highly likely" that practices vary without providing any evidence. [Doc. 59-1, p. 15]. Plaintiffs have apparently not even served open-records requests or taken any steps to try and determine when counties provide notice to voters.

Most of the County Defendants already provide notice in a shorter timeline than that sought by Plaintiffs.[3] For example, almost all of the

---

[2] All citations to page numbers are to the blue CM/ECF pagination.

[3] To assist the Court in evaluating Plaintiffs' claims, County Defendants attach the following declarations from county election officials to this brief:

- Dec. of Ginger Nickerson, attached as Ex. A ("Albany-Dougherty Dec.");
- Dec. of Charlotte Sosebee, attached as Ex. B ("Athens-Clarke Dec.");
- Dec. of Colin A. McRae, attached as Ex. C ("Chatham Dec.");
- Dec. of Shauna Dozier, attached as Ex. D ("Clayton Dec.");
- Dec. of Janine Eveler, attached as Ex. E ("Cobb Dec.");
- Dec. of Erica Hamilton, attached as Ex. F ("DeKalb Dec.");
- Dec. of Milton Kidd, attached as Ex. G ("Douglas Dec.");
- Dec. of Floyd Jones, attached as Ex. H ("Fayette Dec.");
- Dec. of Mandi Smith, attached as Ex. I ("Forsyth Dec.");
- Dec. of Ralph M. Jones, attached as Ex. J ("Fulton Dec.");
- Dec. of Kristi Royston, attached as Ex. K ("Gwinnett Dec.");
- Dec. of Ameika Pitts, attached as Ex. L ("Henry Dec.");
- Dec. of Jeanetta Watson, attached as Ex. M ("Macon-Bibb Dec.");
- Dec. of Nancy Boren, attached as Ex. N "(Muscogee Dec.");

County Defendants provide notice within three business days of processing an absentee-ballot application using email, phone, and letters—and often are able to contact voters in fewer than three business days. Albany-Dougherty Dec. ¶ 3; Athens-Clarke Dec. ¶ 3; Chatham Dec. ¶ 3; Clayton Dec. ¶ 3; Cobb Dec. ¶ 3; DeKalb Dec. ¶ 6; Douglas Dec. ¶ 3; Fayette Dec. ¶¶ 6-7; Forsyth Dec. ¶ 3; Fulton Dec. ¶ 3; Gwinnett Dec. ¶¶ 5-8; Henry Dec. ¶ 3; Macon-Bibb Dec. ¶ 3; Muscogee Dec. ¶ 3; Newton Dec. ¶ 3; Richmond Dec. ¶ 3; Rockdale Dec. ¶ 3. Several of the County Defendants would require additional staffing to make a one-day response time in the 11-day period before the election. Albany-Dougherty Dec. ¶ 4; Chatham Dec. ¶4; DeKalb Dec. ¶ 7; Fayette Dec. ¶ 8; Forsyth Dec. ¶ 4; Henry Dec. ¶ 4, Newton Dec. ¶ 4, Richmond Dec. ¶ 4. In contrast to Plaintiffs' speculation about what might happen, the actual evidence shows that the County Defendants process absentee-ballot applications as required by statute.

## II.   Cost of postage to counties.

Despite claiming there is "no adequate justification for failing to pre-pay postage" for absentee ballots, [Doc. 58, p. 27], Plaintiffs also admit that the postal service will deliver absentee ballots without postage. [Doc. 59-1, p.

- Dec. of Angela Mantle, attached as Ex. O ("Newton Dec.");
- Dec. of Lynn Bailey, attached as Ex. P ("Richmond Dec."); and
- Dec. of Cynthia Willingham, attached as Ex. Q ("Rockdale Dec.").

13]. Further, return postage is already paid for military voters. Albany-Dougherty Dec. ¶ 6; Athens-Clarke Dec. ¶ 4; Cobb Dec. ¶ 5; Douglas Dec. ¶ 5; Forsyth Dec. ¶ 6; Fulton Dec. ¶ 5; Henry Dec. ¶ 6; Muscogee Dec. ¶ 4; Newton Dec. ¶ 6; Richmond Dec. ¶ 6; Rockdale Dec. ¶ 5. Almost all of the County Defendants provide options for voters to return absentee ballots without mailing them. Albany-Dougherty Dec. ¶ 6; Athens-Clarke Dec. ¶ 4; Chatham Dec. ¶ 6; Clayton Dec. ¶ 6; Cobb Dec. ¶ 5; DeKalb Dec. ¶ 9; Douglas Dec. ¶ 5; Forsyth Dec. ¶ 6; Fulton Dec. ¶ 5; Henry Dec. ¶ 6; Macon-Bibb Dec. ¶ 5; Newton Dec. ¶ 6; Richmond Dec. ¶ 6; Rockdale Dec. ¶ 5; *but see* Fayette Dec. ¶ 12. Of those who can estimate the cost, the total cost of prepaying postage runs in the tens of thousands of dollars for which election offices currently do not have appropriated funds. Albany-Dougherty Dec. ¶ 7; Athens-Clarke Dec. ¶ 5; Chatham Dec. ¶  7; Clayton Dec. ¶ 5; Cobb Dec. ¶ 6; DeKalb Dec. ¶¶ 11-13; Douglas Dec. ¶ 6; Fayette Dec. ¶ 11; Forsyth Dec. ¶ 7; Fulton Dec. ¶ 6; Henry Dec. ¶ 7; Macon-Bibb Dec. ¶ 6; Muscogee Dec. ¶ 5; Newton Dec. ¶ 7; Richmond Dec. ¶ 6; Rockdale Dec. ¶ 6.

## III.   The certification process for counties.

After voting concludes, county election officials begin the certification process, which must be complete by 5:00 P.M. on the second Friday after the election. O.C.G.A. § 21-2-493(k). In that time, election officials complete their

processing of absentee and provisional ballots, tabulate votes from electronic vote scanners, and duplicate ballots that are damaged or mismarked by voters. Albany-Dougherty Dec. ¶ 8; Clayton Dec. ¶ 7; Douglas Dec. ¶ 7; Forsyth Dec. ¶ 8; Gwinnett Dec. ¶¶ 14-18; Henry Dec. ¶ 8; Newton Dec. ¶ 8; Richmond Dec. ¶ 7. Further, during this period, election officials must be available for voters to cure signature mismatches, O.C.G.A. § 21-2-385(a), and, beginning in November 2020, must also conduct a precertification tabulation audit. O.C.G.A. § 21-2-498(b).

When a scanner cannot electronically read a ballot, a panel of three officials must then review the ballot, determine the voter's intent, and create a new ballot with correct marks—a process known as "ballot duplication." Gwinnett Dec. ¶ 16-18. For provisional ballots cast out-of-precinct, the same panel must create a new ballot with only the races for which the voter was eligible. *Id*. At least one large county did not complete the certification process until nearly the deadline for certification. Gwinnett Dec. ¶ 14.

## IV.   Receipt of absentee ballots after the deadline.

The Georgia General Assembly designed the certification process around the Election-Day receipt deadline. At least 32 other states use the same method as Georgia, with a receipt deadline of a certain point at the close of the polls or before. See *National Conference of State Legislatures*,

VOPP: Table 11: Receipt and Postmark Deadlines for Absentee Ballots, https://www.ncsl.org/research/elections-and-campaigns/vopp-table-11-receipt-and-postmark-deadlines-for-absentee-ballots.aspx (June 15, 2020).

Plaintiffs do not like this process and, instead, propose a new one requiring counties to accept and count absentee ballots up to a minimum of five business days after Election Day if the postmark reflects any day prior to and including Election Day.[4] [Doc. 57-1, p. 3]. Dr. Mayer similarly proposes counting all "absentee ballots arriving within a week of the election." [Doc. 59-1, p. 35]. In other words, Plaintiffs propose that the Court engage in an impromptu exercise of policymaking, and the "support" Plaintiffs submit in favor of their proposed "process" looks much like the public comment submissions already received by federal and state administrative agencies and lawmakers around the country.[5]

Given all the required pre-certification steps, county election officials have significant concerns about their ability to continue processing

---

[4] This proposed timeline is longer than the period currently allowed for overseas and military voters' absentee ballots to arrive, which is three days after the election. O.C.G.A. § 21-2-386(a)(1)(G).

[5] Dr. Mayer tacitly acknowledges that many of these issues are policy questions, noting the partisan response to the switch to absentee voting. [Doc. 59-2, pp. 117-118]. Other reports cited by Plaintiffs make other policy recommendations, including expanding polling locations and encouraging absentee voting. [Doc. 59-2, p. 126].

substantial numbers of additional absentee ballots received after the deadline, especially when counties must provide those voters with notice of potential signature mismatches and the opportunity to cure before certification. Albany-Dougherty Dec. ¶ 8; Athens-Clarke Dec. ¶ 6; Clayton Dec. ¶ 7; Cobb Dec. ¶ 7; DeKalb Dec. ¶ 14; Fayette Dec. ¶¶ 13-16; Forsyth Dec. ¶ 8; Fulton Dec. ¶ 7; Gwinnett Dec. ¶¶ 11-12; Henry Dec. ¶ 8; Macon-Bibb Dec. ¶ 7; Newton Dec. ¶ 8; Richmond Dec. ¶ 7; Rockdale Dec. ¶ 7; O.C.G.A. § 21-2-385(a). Georgia legislators appear to have designed the certification deadline around the opportunity to audit election results, Gwinnett Dec. ¶ 13, O.C.G.A. § 21-2-498(b), and having ballots continue to come in after the 7:00 P.M. deadline on Election Day would delay the ability of counties to certify results, which could in turn delay state certification. Albany-Dougherty Dec. ¶ 8; Clayton Dec. ¶ 7; Cobb Dec. ¶ 7; Fayette Dec. ¶ 16; Forsyth Dec. ¶ 8; Gwinnett Dec. ¶¶ 11-12; Henry Dec. ¶ 8; Macon-Bibb Dec. ¶ 7; Newton Dec. ¶ 8; Richmond Dec. ¶ 7; Rockdale Dec. ¶ 7.

While Plaintiffs cite the rejection rates for absentee ballots in 2018, [Doc. 59-1, p. 27], they ignore the fact that most of the "discretionary" reasons for rejecting absentee ballots no longer apply after the General Assembly amended O.C.G.A. 21-2-384(c) following the 2018 election and eliminated

most additional information in the oath from voters. The only voter-filled item on an absentee ballot is now the signature. *Id.*

## V. Rollover lists.

Counties maintain the list of voters eligible to receive an absentee ballot for the entire election cycle on a "rollover list." Clayton Dec. ¶ 4; Forsyth Dec. ¶ 5; Gwinnett Dec. ¶¶ 19-21; Henry Dec. ¶ 5; Macon-Bibb Dec. ¶ 4; Muscogee Dec. ¶ 4; Newton Dec. ¶ 5. Larger counties have tens of thousands of individuals on their rollover lists for 2020—including some counties that have more individuals on the rollover list than the number of absentee ballots they typically send out during an entire general primary. Forsyth Dec. ¶ 5; Gwinnett Dec. ¶ 19.

Issuing absentee ballots to voters is the same whether a new application is received or not. Gwinnett Dec. ¶ 20-21; Henry Dec. ¶ 5; Muscogee Dec. ¶ 4; Richmond Dec. ¶ 5. Most counties do not have sufficient staff or space to issue absentee ballots to a larger group of individuals added to rollover lists.[6] Albany-Dougherty Dec. ¶ 5; Chatham Dec. ¶ 5; Clayton Dec. ¶ 4; Cobb Dec. ¶ 4; DeKalb Dec. ¶ 8; Douglas Dec. ¶ 4; Fayette Dec. ¶¶ 9-10;

---

[6] Processing additional ballots from larger rollover lists would likely require changes to State Election Board rules. Rockdale Dec. ¶ 4. At least one county is considering installing a mail-processing center inside its elections office to handle the volume for the rest of the 2020 elections. Gwinnett Dec. ¶¶ 19-21.

Forsyth Dec. ¶ 5; Fulton Dec. ¶ 4; Gwinnett Dec. ¶¶ 19-21; Henry Dec. ¶ 5; Macon-Bibb Dec. ¶ 4; Muscogee Dec. ¶ 4; Newton Dec. ¶ 5; Richmond Dec. ¶ 5; Rockdale Dec. ¶ 4.

Mailing absentee ballots to voters who have not requested them adds to the burden on poll officials on Election Day. Gwinnett Dec. ¶¶ 22-23. If an individual has received an absentee ballot in the mail, he or she must first execute a cancellation form before voting on the voting machines. O.C.G.A. § 21-2-388. In at least some counties on June 9, many voters opted to vote in person even after previously requesting an absentee ballot, contributing to lines at the polls. Gwinnett Dec. ¶ 23.

## VI.    Ballot harvesting.

Plaintiffs also seek changes to Georgia law regarding who can handle an absentee ballot. [Doc. 58, pp. 21-23]. But Plaintiffs conveniently ignore the host of administrative requirements that would be necessary for such a system.[7] For example, organizations that collect ballots from voters may wait until Election Day to deliver absentee ballots, which can overwhelm election offices. Fayette Dec. ¶ 17. While current State Election Board rules require organizations that submit voter registrations to be tracked, similar

---

[7] Fulton County would need to change its signature-verification process and purchase signature-verification software. Fulton Dec. ¶ 8.

requirements would be needed to track voted ballots. Cobb Dec. ¶ 7; Rockdale Dec. ¶ 8. Additional affidavits would also be required to ensure the confidentiality of voters' ballots and accountability if a ballot was not returned. *Id*.

## VII.   Facts about standing.

As part of Plaintiffs' filing, the director of the New Georgia Project ("NGP") offered a declaration to support the argument that it has standing. [Doc. 59-3]. But the declaration is full of contradictions that undermine that claim. NGP alleges it will divert resources to confer with constituents, *id*. at ¶ 8, but also acknowledges that this type of conferring is part of its mission, *id*. at  ¶¶ 2, 5. NGP also claims it will have to increase voters and assist them with voting, *id*. at ¶ 10, but that activity also tracks its mission, *id*. at ¶¶ 2,5. NGP says it will spend funds buying masks and gloves and stamps, *id*. at ¶¶ 13, 17, but it does not explain what it will have to stop doing or what programs it will not be able to fulfill because of the alleged diversion. In fact, if it gets the relief it seeks to assist voters with ballot harvesting, it would need to spend even more money. *Id*. at ¶ 21.

The individual plaintiffs have likewise added nothing to their insufficient standing claims in their Amended Complaint. Reagan Jennings signed her declaration on the day *after* the primary election (June 10), but

stated she had not mailed her ballot or decided who to vote for. [Doc. 59-4, ¶ 8, p. 5]. Ms. Jennings's claimed injuries appear to stem from (1) her failure to even get her ballot postmarked by election day, (2) her confusion over the ballot design, (3) the broken red flag on her mailbox, and (4) her desire to have more time to research candidates before voting. *Id.* at ¶ 8, p. 5. Ms. Jennings has stamps, even if she does not know how many stamps are required on the ballot. *Id.* at ¶ 7.

Candace Woodall likewise had not mailed her signed ballot by June 5, the date of her declaration and only four days before the primary. [Doc. 59-5, ¶ 8, p. 5]. While claiming she does not "typically keep stamps in my home," she does not state that she does not have stamps and complains about the lack of clarity of the instructions, which Plaintiffs do not even challenge in this case. *Id.* at ¶¶ 5, 8. If Ms. Woodall is disabled, *id.* at ¶¶ 4-6, she can receive an absentee ballot for the entire election cycle. O.C.G.A. 21-2-381(a)(1)(G).

Beverly Pyne says she applied "online" for an absentee ballot in 2018,[8] but did not receive it until the day before Election Day. [Doc. 59-6, ¶ 4]. According to Gwinnett County records, the first time Gwinnett registrars

_____

[8] It is unclear how Ms. Pyne would have accomplished this task, because Georgia law requires a signature on an absentee-ballot application. O.C.G.A. § 21-2-381(b)(1).

received an application from Ms. Pyne was October 27, 2018—nine days before the election—and the ballot was mailed the same day. Gwinnett Dec. ¶¶ 25-26. Ms. Pyne returned her ballot but it did not arrive until November 9, 2018. *Id*. at ¶ 27. Ms. Pyne says she applied to vote in the June primary election, [Doc. 59-4, ¶ 8], but fails to mention that she did not check which type of ballot she was requesting (Democratic, Republican, or Nonpartisan). *Id*. at ¶ 28. Her request was rejected for this reason and she was notified. *Id*. The rest of Ms. Pyne's declaration discusses her policy beliefs about the number of applications she should have to make, her fears about not receiving her ballot in time to vote in November, and admitting that she has stamps, but does not want to pay. [Doc. 59-4, ¶¶ 8, 9, 11].

## VIII. Other declarations attached to filing.

Plaintiffs also attach a slew of declarations from individuals who support their policy preferences. Almost all these voter-declarants were able to successfully vote in the June primary even if they quibbled over how the process should have run differently. *See* [Doc. 59-7, ¶¶ 6, 8] (notified about rejection and could resolve issue by email; able to pay postage); [Docs. 59-9, ¶ 5; 59-11, ¶ 19; 59-13, ¶¶ 5-6; 59-71, ¶ 9] (able to vote in primary by using drop box); [Docs. 59-10, ¶ 9; 59-15, ¶ 5] (voted absentee by mail); [Docs. 59-14, ¶ 6; 59-69, ¶ 6; 59-16, ¶¶ 15-19; 59-17, ¶ 10; 59-18, ¶ 9] (voted using early voting);

[Docs. 59-67, ¶ 5; 59-68, ¶¶ 10-11] (voted in person on Election Day). Of those who were unable to vote, some were the result of the voter's own mistakes, [Doc. 59-12, ¶¶ 5, 7], or voters who waited until after Election Day to try to resolve issues with their ballot despite knowing of potential problems before the election, [Doc. 59-8, ¶ 7]. One out-of-state DeKalb County voter did not receive her absentee ballot until the day before the election, [Doc. 59-70, ¶¶ 4-6], and one Fulton County voter never received his absentee ballot, [Doc. 59-90, ¶¶ 3-4, 9]. While all the declarants support the policy positions offered by Plaintiffs, Rep. Cannon assisted voters and wants Georgia to "do better" in November. [Doc. 73-1, ¶ 10].

## ARGUMENT AND CITATION OF AUTHORITY

Because temporary restraining orders and preliminary injunctions are such extraordinary and drastic remedies, courts may not grant this type of relief "unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). Plaintiffs must show that: (1) they have a substantial likelihood of success on the merits of their claims; (2) they will likely suffer irreparable harm in the absence of an injunction; (3) the balance of equities tips in Plaintiffs' favor; and (4) an injunction is in the

14

public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008).

Preliminary injunctions are never granted as of right, even if a plaintiff can show a likelihood of success on the merits. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018). While a preliminary injunction is already a form of extraordinary relief, that relief is an even-more-heightened form of extraordinary relief in the context of elections, because of the public interest in orderly elections and the integrity of the election process. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5, 127 S. Ct. 5 (2006).

Particularly important here is the U.S. Supreme Court's recognition that when "an impending election is imminent and a State's election machinery is already in progress," equitable considerations justify a court denying an attempt to gain immediate relief—even after an elections practice was found unconstitutional. *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."). This is because parties must show they exercised reasonable diligence, especially in the context of elections. *Benisek*, 138 S. Ct. at 1944.

Plaintiffs here are not entitled to the preliminary injunction they seek because they have not shown they have standing to pursue these claims, nor have they shown that the statutes challenged cannot be constitutionally applied. Injunctive relief is also not in the interest of the public at this stage of the election process and the burden on County Defendants from Plaintiffs' proposed relief will be significant. Even with all their declarations, Plaintiffs have not identified voters who were denied their right to vote as a result of the challenged statutes. *Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 582 (11th Cir. 1995) ("federal courts should refrain from holding a state election law unconstitutional when a reasonable alternative course of action exists").

## I.      Plaintiffs do not show a likelihood of success on the merits.

As explained in County Defendants' Motion to Dismiss, which is incorporated by reference, [Doc. 82-1], Plaintiffs do not provide enough evidence that they have standing to bring these claims or that they have sued the correct parties. NGP does not explain what programs it will stop doing as a result of the laws it challenges, nor how the activities diverge from its mission. *Compare Jacobson v. Fla. Sec'y*, 957 F.3d 1193, 1206 (11th Cir. 2020) (requiring showing of what activities an organization would divert resources away from) *with* [Doc. 59-3, ¶¶ 2, 5, 8, 13, 17]. Ms. Jennings's claimed

injuries result from a broken mailbox and a wish for more time to research candidates. [Doc. 59-4, ¶ 8, p. 5]. Ms. Woodall does not claim she has no access to stamps, just that she would rather vote in a different manner. [Doc. 59-5, ¶ 8, p. 5]. Ms. Pyne only expresses fears about the November election. [Doc. 59-4, ¶¶ 8, 9, 11]. For all the reasons addressed in [Doc. 82-1], Plaintiffs do not provide sufficient evidence to invoke this Court's jurisdiction or show any concrete or particularized injury sufficient to confer standing.

County Defendants take no position on the constitutional or Voting Rights Act claims made by Plaintiffs beyond noting that nearly all of the individuals brought to this Court as declarants could vote in the June 9 primary, even if they would have preferred to handle voting during a pandemic in a different way. The judicial system is not a conduit for a particular group to force election officials to adopt its preferred method of administering elections. *GALEO v. Gwinnett Cty. Bd. of Registrations & Elections*, No. 1:20-cv-1587-WMR, 2020 U.S. Dist. LEXIS 86998, at *3 (N.D. Ga. May 8, 2020).

## II.   Plaintiffs have not established an irreparable harm.

Plaintiffs make the conclusory claim that because there is a "risk of disenfranchisement," irreparable harm exists. [Doc. 58, p. 42]. But Plaintiffs fail to distinguish the nature of the alleged harm, because not every

perceived injury that could be related to voting is a threat to the right to vote. *See McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807, 89 S. Ct. 1404, 1408 (1969) (threat to right to absentee ballot, not right to vote). Plaintiffs cite to alleged "injuries" based on the COVID-19 pandemic continuing [Doc. 58, pp. 11-15], but an injury from a virus differs from an injury resulting from a government's act or failure to act. *Coal. for Good Governance v. Raffensperger*, No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *9 n.2 (N.D. Ga. May 14, 2020) (noting virus caused alleged injuries).

Further, "[a]lthough the right to vote is fundamental, '[i]t does not follow, however, that the right to vote in any manner . . . [is] absolute." *Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registrations & Elections,* 2020 U.S. Dist. LEXIS 36702 *14–15 (March 3, 2020) quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). While Plaintiffs cite to dozens of declarants who wished they could vote in any variety of different ways, they do not show an actual disenfranchisement caused by the challenged practices, because almost all of their declarants could vote. [Doc. 59-7, ¶¶ 6, 8] (notified about rejection and could resolve issue by email; able to pay postage); [Docs. 59-9, ¶ 5; 59-11, ¶ 19; 59-13, ¶¶ 5-6; 59-71, ¶ 9] (able to vote in primary by using drop box); [Docs. 59-10, ¶ 9; 59-15, ¶ 5] (voted absentee by mail); [Docs. 59-14, ¶ 6;

59-69, ¶ 6; 59-16, ¶¶ 15-19; 59-17, ¶ 10; 59-18, ¶ 9] (voted using early voting); [Docs. 59-67, ¶ 5; 59-68, ¶¶ 10-11] (voted in person on Election Day).

The State Election Board extended the emergency rules allowing the continuing use of drop boxes on July 1,[9] further reducing any potential injury on the part of Plaintiffs. Ultimately, the only threat to the right to vote of Plaintiffs or the declarants is based on a chain of possibilities—*if* the virus continues to Election Day and *if* absentee-ballot applications are not timely processed and *if* there are delays in the mail and *if* voters cannot vote in person, they *might* be injured. A daisy chain arising from "life's vagaries," *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197, 128 S. Ct. 1610, 1620 (2008), is not irreparable harm. Nor is there irreparable harm to the NGP because it cannot cite to specific examples of what it will have to stop doing if the laws it challenges continue to apply. [Doc. 59-3].

In the context of a preliminary injunction, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *NE Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285

---

[9] Stephen Fowler, Ga. Pub. Broadcasting, *Election Board OKs Continued Use Of Absentee Drop Boxes, Early Processing Of Ballots* (July 1, 2020) available at https://www.gpbnews.org/post/election-board-oks-continued-use-absentee-drop-boxes-early-processing-ballots (noting extension of Ga. Comp. R. & Regs. r. 183-1-14-0.6-.14).

(11th Cir. 1990)). But here, Plaintiffs cite only to remote, subjective, and speculative harms and, therefore, they show no irreparable harm if the Court declines to enter injunctive relief at this stage.

## III.   The balance of equities does not favor Plaintiffs.

Plaintiffs lack evidence to support their claim that County Defendants face mere "administrative inconveniences." [Doc. 58, p. 43]. County Defendants must meet deadlines for the certification of elections and Plaintiffs seek to impose new deadlines that could dramatically affect timely election certification by adding an unspecified number of absentee ballots. *See supra* at pp. 7-11. If Plaintiffs succeed and set new deadlines for the receipt of ballots after current statutory deadlines, it would open a Pandora's Box of additional administrative decisions: how would county officials handle the cure period for mismatching signatures for ballots received days after the election? What if the cure period is still open when the statutory certification deadline arrives? What do county officials do with ballots received six days after the election instead of five?[10] Plaintiffs do not consider how Georgia voters could suffer from an *ad hoc* and chaotic election process.

---

[10] And these administrative difficulties do not even consider how this Court is to determine that it is constitutional to reject absentee ballots received six business days after the election but unconstitutional to reject them if received

As a practical and policy matter, these issues may be something for the General Assembly to consider, but this Court cannot "erase a duly enacted law from the statute books." *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1209 (11th Cir. 2020), quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018). This Court can stay the use of particular statutes, but cannot rewrite the rest of Georgia's Election Code to address the major disruptions caused by the policy changes Plaintiffs seek. *Mitchell, supra* at 936; *see also Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1286 (11th Cir. 2019) (Tjoflat, J. dissenting) (criticizing rewrite of Georgia Election Code in injunction).

Plaintiffs' failure to join all 159 counties leads to another problem with the equities, because this Court may "exercise that power only when the officials who enforce the challenged statute are properly made parties to a suit," *Jacobson*, 957 F.3d at 1209. Election systems in the United States must avoid "arbitrary and disparate treatment to voters." *Bush v. Gore*, 531 U.S. 98, 107, 121 S. Ct. 525, 531 (2000). If this Court grants all the relief Plaintiffs seek, their remedy will ensure that voters in 17 counties will have their absentee ballots treated one way, while voters in 142 other counties will have

---

12 hours earlier. *See Coal. for Good Governance v. Raffensperger*, 2020 U.S. Dist. LEXIS 86996, at *9.

their votes treated differently. Quite simply, the equities do not favor making the kinds of changes Plaintiffs propose.

## IV.   The public interest does not favor Plaintiffs.

Despite the critical importance of serving the public interest, particularly in the election context, Plaintiffs devote exactly three sentences to this prong in their brief. [Doc. 58, pp. 43-44]. Plaintiffs' proposed injunction is not in the public interest because of their lack of diligence and the fact that the proposed order does not address the interests in preventing voter fraud and the regular processing of elections.

> A.   *The proposed injunction is not in the public interest because Plaintiffs failed to exercise due diligence in bringing this action and seek to change the rules of the election after it is well underway.*

Litigation involving elections is unique because of the interest in the orderly administration and integrity of the election process. *Purcell*, 549 U.S. at 4; *Republican Nat'l Comm.*, 140 S. Ct. at 1207. The risks of voter confusion and conflicting orders counsel against changing election rules, especially when there is little time to resolve factual disputes. *Purcell*, 549 U.S. at 5-6. Thus, to show they are entitled to a preliminary injunction, Plaintiffs must show they exercised reasonable diligence—something they cannot do. *Benisek*, 138 S. Ct. at 1944.

The laws Plaintiffs challenge are not new, nor are they particularly novel when looking at the laws of other states. Georgia engaged in an extensive process to update its election laws following the 2018 election, 2019 Ga. Laws Act. No. 24, and yet Plaintiffs waited until after the June 9, 2020 primary was complete to bring this Motion. Absentee ballots for the November general election go out on September 15, 2020, O.C.G.A. § 21-2-384, a mere 69 days from today. And County Defendants will be running the August 11 primary runoff elections in that intervening period.

Unlike the narrow timelines for overhauling the Georgia Election Code in Plaintiffs' Motion, Plaintiffs' counsel developed their "Four Pillars" litigation strategy as far back as March 2020. See *Safeguarding Our Democracy with Vote by Mail*, https://www.democracydocket.com/wp-content/uploads/sites/41/2020/04/Safeguarding-Our-Democracy-with-Vote-by-Mail_April2020.pdf at page 4 (March 18, 2020). But rather than move immediately to address Georgia's laws, counsel for Plaintiffs began filing lawsuits in other states in April 2020. See *Democracy Docket for April 2020*, https://www.democracydocket.com/2020/04/april-2020/ (April 30, 2020) ("As of today, we have filed vote by mail lawsuits in Nevada, South Carolina and Pennsylvania.").

In short, counsel for Plaintiffs have had personal knowledge of the laws challenged here and waited to file this litigation until the eleventh hour when the State's election machinery for the 2020 elections was well underway, which hardly shows they exercised reasonable diligence in this case. *Reynolds*, 377 U.S. at 585; *Benisek*, 138 S. Ct. at 1944.

As the past few months have shown, changing many election practices at the last minute can lead to confusion by voters, poll workers, and others involved in the process. Fayette Dec. ¶ 18. The potential for voter confusion by again changing the rules on absentee ballots is significant and counsels against granting a preliminary injunction. *Benisek*, 138 S. Ct. at 1944-45.

> B.   *The proposed order is not in the public interest because the challenged laws serve important purposes.*

As outlined above, the evidence shows that more than 30 states use receipt deadlines of Election Day, and most counties notify voters of their rejected absentee-ballot applications promptly, as required by statute. Changing the election processes now by adding even more burdens to election officials preparing for elections, at polling places on Election Day, when processing and duplicating absentee ballots, and when certifying election results, could disrupt the timely processing of absentee ballots and reporting of results. *See supra* at pp. 3-11. This is not in the public interest, especially

in a high-profile presidential election. *Broughton v. Douglas Cty. Bd. of Elections*, 286 Ga. 528, 528–29 (2010) (noting "legislature's strong desire to avoid election uncertainty and the confusion and prejudice which can come in its wake.").

Further, any remedy proposed by Plaintiffs must address the State's interest in preventing absentee ballot fraud. *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1353-55 (11th Cir. 2009). Plaintiffs' proposed order is also not in the public interest because it does not address this critical state interest, given the potential for counting absentee ballots that arrive well after the election is over.

## CONCLUSION

Even if this Court finds Plaintiffs have standing to bring this motion, this Court should deny Plaintiffs' Motion because they have shown none of the four requisites for an injunction in support of their position. This Court should deny Plaintiffs' Motion and allow the litigation process to proceed on its normal course rather than be handled through emergency motions.

[signature blocks on following pages]

Respectfully submitted this 8th day of July, 2020.

| | |
|---|---|
| */s/ Bryan P. Tyson* | */s/ Kenneth P. Robin* |
| Bryan P. Tyson | Kenneth P. Robin |
| Georgia Bar No. 515411 | Georgia Bar No. 609798 |
| btyson@taylorenglish.com | krobin@jarrard-davis.com |
| Diane Festin LaRoss | **JARRARD & DAVIS, LLP** |
| Georgia Bar No. 430830 | 222 Webb Street |
| dlaross@taylorenglish.com | Cumming, Georgia 30040 |
| Bryan F. Jacoutot | 678-455-7150 (telephone) |
| Georgia Bar No. 668272 | 678-455-7149 (facsimile) |
| bjacoutot@taylorenglish.com | |
| Loree Anne Paradise | *Attorneys for the Forsyth County* |
| Georgia Bar No. 382202 | *Defendants and the Albany-* |
| lparadise@taylorenglish.com | *Dougherty Defendants* |
| **TAYLOR ENGLISH DUMA LLP** | |
| 1600 Parkwood Circle, Suite 200 | |
| Atlanta, GA 30339 | |
| 770.434.6868 (telephone) | |
| | |
| *Counsel for the Gwinnett County* | |
| *Defendants and the Fayette County* | |
| *Defendants* | |

| | |
|---|---|
| */s/ Daniel W. White* <br> Daniel W. White <br> Georgia Bar No. 153033 <br> dwhite@hlw-law.com <br> **HAYNIE, LITCHFIELD &** <br> **WHITE, PC** <br> 222 Washington St. <br> Marietta, Georgia 30064 <br> 770-422-8900 (telephone) <br> 770-424-8900 (facsimile) <br><br> *Attorney for Cobb County Defendants* | */s/ Shelley D. Momo* <br> Shelley D. Momo <br> Assistant County Attorney <br> Georgia Bar No. 239608 <br> Irene B. Vander Els <br> Assistant County Attorney <br> Georgia Bar No. 033663 <br> **DEKALB COUNTY LAW** <br> **DEPARTMENT** <br> 1300 Commerce Drive, 5th Floor <br> Decatur, Georgia 30030 <br> Telephone:  (404) 371-3011 <br> Facsimile:  (404) 371-3024 <br> sdmomo@dekalbcountyga.gov <br> ivanderels@dekalbcountyga.gov <br><br> *Attorneys for the DeKalb County* <br> *Defendants* |
| */s/ William J. Linkous III* <br> William J. Linkous III <br> Georgia Bar No. 453213 <br> wlinkous@fmglaw.com <br> **FREEMAN MATHIS & GARY LLP** <br> 100 Galleria Parkway <br> Suite 1600 <br> Atlanta, Georgia 30339-5948 <br> (770) 818-0000 (telephone) <br> (770) 937-9960 (facsimile) <br><br> *Attorney for Rockdale County* <br> *Defendants* | */s/ Alan G. Snipes* <br> James C. Clark, Jr. <br> Ga. Bar No.: 127145 <br> Alan G. Snipes <br> Ga. Bar No.: 665781 <br> **PAGE, SCRANTOM, SPROUSE,** <br> **TUCKER & FORD, P.C.** <br> 1111 Bay Avenue, Third Floor <br> Columbus, Georgia 31901 <br> (706) 324-0251 <br><br> *Attorneys for Columbus-Muscogee* <br> *Defendants* |

| | |
|---|---|
| */s/ William H. Noland* | */s/ Rachel N. Mack* |
| WILLIAM H. NOLAND | Rachel N. Mack |
| Georgia Bar No. 545605 | Staff Attorney |
| william@nolandlawfirmllc.com | Georgia Bar No. 104990 |
| Virginia C. Josey | Wayne Brown |
| Georgia Bar No. 261459 | General Counsel |
| virginia@nolandlawfirmllc.com | Georgia Bar No. 089655 |
| **Noland Law Firm, LLC** | **AUGUSTA LAW DEPARTMENT** |
| 5400 Riverside Drive, Suite 205 | 535 Telfair Street, Building 3000 |
| Macon, Georgia 31210 | Augusta, Georgia 30901 |
| (478)621-4980 telephone | Telephone:  (706) 842-5550 |
| (478)621-4282 facsimile | Facsimile:  (706) 842-556 |
| | rmack@augustaga.gov |
| *Counsel for Macon-Bibb County* | wbrown@augustaga.gov |
| *Defendants* | |
| | *Attorneys for the Richmond County* |
| | *Defendants* |

*s/Kaye Woodard Burwell*
Georgia Bar Number:   775060
kaye.burwell@fultoncountyga.gov
*s/Cheryl Ringer*
Georgia Bar Number: 557420
cheryl.ringer@fultoncountyga.gov
*s/David R. Lowman*
Georgia Bar Number: 460298
david.lowman@fultoncountyga.gov

**OFFICE OF THE FULTON COUNTY ATTORNEY**
Office of the County Attorney
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
Telephone: (404) 612-0246

*Attorneys for the Fulton County Defendants*

*/s/ Gregory C. Sowell*
Gregory C. Sowell
Georgia Bar No. 668655
**COOK & TOLLEY, LLP**
304 East Washington Street
Athens, Georgia 30601
Phone: (706) 549-6111
Fax: (706) 548-0956
Email: gregsowell@cooktolley.com

*/s/ John Matthew Hawkins*
John Matthew Hawkins
Georgia Bar No. 120839
**ATHENS-CLARKE COUNTY ATTORNEY'S OFFICE**
P.O. Box 427
Athens, Georgia 30603
Phone: (706) 613-3035
Fax: (706) 613-3037
Email: john.hawkins@accgov.com

*Attorneys for Athens-Clarke County Defendants*

| | |
|---|---|
| */s/ R. Jonathan Hart* <br> R. JONATHAN HART <br> State Bar No. 333692 <br> /s/ Jennifer R. Davenport <br> JENNIFER R. DAVENPORT <br> State Bar No. 330328 <br> **Chatham County Attorney's Office** <br> P. O. Box 8161 <br> Savannah, GA  31412 <br> T: (912) 652 7881 <br> F: (912) 652 7887 <br> Email: rjhart@chathamcounty.org <br> jdavenport@chathamcounty.org <br><br> *Attorneys for the Chatham County* <br> *Defendants* | */s/ David A. Cole* <br> David A. Cole <br> Georgia Bar No. 142383 <br> Timothy M. Boughey <br> Georgia Bar No. 832112 <br> **FREEMAN MATHIS & GARY,** <br> **LLP** <br> 100 Galleria Parkway <br> Suite 1600 <br> Atlanta, Georgia 30339 <br> (T) 770.818.0000 <br> (F) 770.937.9960 <br> (E) dcole@fmglaw.com <br> tboughey@fmglaw.com <br><br> *Counsel for the Douglas County* <br> *Defendants* |
| */s/ Jack R. Hancock* <br> Jack R. Hancock <br> Georgia Bar No. 322450 <br> jhancock@fmglaw.com <br> A. Ali Sabzevari <br> Georgia Bar No. 941527 <br> asabzevari@fmglaw.com <br> **Freeman Mathis & Gary, LLP** <br> 661 Forest Parkway, Suite E <br> Forest Park, Georgia 30297 <br> (404) 366-1000 (telephone) <br> (404) 361-3223 (facsimile) <br><br> *Counsel for the Clayton County* <br> *Defendants* | */s/ Kenneth P. Robin* <br> Kenneth P. Robin <br> Georgia Bar No. 609798 <br> krobin@jarrard-davis.com <br> Megan N. Martin <br> Georgia Bar No. 140851 <br> mmartin@jarrard-davis.com <br> **JARRARD & DAVIS, LLP** <br> 222 Webb Street <br> Cumming, Georgia 30040 <br> 678-455-7150 (telephone) <br> 678-455-7149 (facsimile) <br><br> *Attorneys for the Newton County* <br> *Defendants* |

| | |
|---|---|
| */s/ Kenneth P. Robin*<br>Kenneth P. Robin<br>Georgia Bar No. 609798<br>krobin@jarrard-davis.com<br>Patrick D. Jaugstetter<br>Georgia Bar No. 389680<br>patrickj@jarrard-davis.com<br>**JARRARD & DAVIS, LLP**<br>222 Webb Street<br>Cumming, Georgia 30040<br>678-455-7150 (telephone)<br>678-455-7149 (facsimile)<br><br>*Attorneys for the Henry County*<br>*Defendants* | |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing COUNTY DEFENDANTS' CONSOLIDATED BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson

## **APPENDIX**

"County Defendants" are Benny G. Hand, Pamela Middleton, Dontravious M. Simmons, Annabelle T. Stubbs, and Frederick Williams, in their official capacities as Members of the Albany-Dougherty County Joint Board of Registration and Elections (collectively, the "Albany-Dougherty Defendants"); Jesse Evans, Willa Fambrough, Charles Knapper, and Ann Till, in their official capacities as Members of the Athens-Clarke County Board of Elections and Voter Registration (collectively, the "Athens-Clarke Defendants"); Wanda Andrews, Colin McRae, William L. Norse, Jon Pannell, and Randolph Slay, in their official capacities as Members of the Chatham County Board of Registrars (collectively, the "Chatham Defendants"); Diane Givens, Dorothy Foster Hall, Darlene Johnson, Patricia Pullar, and Carol Wesley, in their official capacities as Members of the Clayton County Board of Elections and Registrations (collectively, the "Clayton Defendants"); Fred Aiken, Neera Bahl, Jessica M. Brooks, Phil Daniell, and Darryl O. Wilson, in their official capacities as Members of the Cobb County Board of Elections and Registration (collectively, the "Cobb Defendants"); Margaret Jenkins, Linda Parker, Uhland Roberts, Diane Scrimpshire, and Eleanor White, in their official capacities as Members of the Columbus-Muscogee County Board of Elections (collectively, the "Columbus-Muscogee Defendants); Anthony

Lewis, Susan Motter, Dele Lowman Smith, Samuel E. Tillman, and Baoky N. Vu, in their official capacities as Members of the DeKalb County Board of Registration and Elections (collectively, the "DeKalb Defendants"); David C. Fedak, Myesha Good, Maurice Hurry, Robert Proctor, and Daniel Zimmermann, in their official capacities as Members of the Douglas County Board of Elections and Registration (collectively, the "Douglas Defendants"); Darryl Hicks, Addison Lester, and Aaron Wright, in their official capacities as Members of the Fayette County Board of Elections and Voter Registration (collectively, the "Fayette Defendants"); Matthew Blender, Barbara Luth, Randy Ingram, Joel Natt, and Carla Radzikinas, in their official capacities as Members of the Forsyth County Board of Registrations and Elections (collectively, the "Forsyth Defendants"); Mary Carole Cooney, Aaron Johnson, Vernetta Nuriddin, Kathleen Ruth, and Mark Wingate, in their official capacities as Members of the Fulton County Board of Registration and Elections (collectively, the "Fulton Defendants"); Beauty Baldwin, Stephen Day, John Mangano, Alice O'Lenick, and Ben Satterfield, in their official capacities as Members of the Gwinnett County Board of Registrations and Elections (collectively, the "Gwinnett Defendants"); Dan Richardson, Donna Morris-McBride, Andy Callaway, Arch Brown, and Mildred Schmelz, in their official capacities as Members of the Henry County Board of Elections and

Registration (collectively, the "Henry Defendants"); Henry Ficklin, Mike Kaplan, Cassandra Powell, Herbert Spangler, and Rinda Wilson, in their official capacities as Members of the Macon-Bibb County Board of Elections (collectively, the "Macon-Bibb Defendants"); Phil Johnson, Kelly Robinson, and Dustin Thompson, in their official capacities as Members of the Newton County Board of Elections and Registration (collectively, the "Newton Defendants"); Sherry T. Barnes, Marcia Brown, Terence Dicks, Bob Finnegan, and Tim McFalls, in their official capacities as Members of the Richmond County Board of Elections (collectively, the "Richmond Defendants"); and Gerald Barger, Karen James, and Aldren Sadler, Sr., in their official capacities as Members of the Rockdale County Board of Elections and Voter Registration (collectively, the "Rockdale Defendants").