**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| THE NEW GEORGIA PROJECT, REAGAN JENNINGS, CANDACE WOODALL, and BEVERLY PYNE, | |
| Plaintiffs, | CIVIL ACTION FILE No. 1:20-CV-01986-ELR |
| v. | |
| BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State and the Chair of the Georgia State Election Board; *et al.*, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO COUNTY DEFENDANTS' CONSOLIDATED MOTION TO DISMISS**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND .............................................................................. 2

III.  LEGAL STANDARD .................................................................... 4

IV.   ARGUMENT ................................................................................... 5

   A.   Plaintiffs have standing. ............................................................ 5

     1.   The Voter Plaintiffs have alleged injuries-in-fact. .................. 5

     2.   All Plaintiffs have adequately alleged traceability and redressability...... 8

   B.   Venue over the Counties is proper. ...........................................12

   C.   Plaintiffs sufficiently state a claim regarding the Absentee Age Restriction. ……………………………………………………………………..14

   D.   Plaintiffs' claims are justiciable and do not raise political questions. ........18

   E.   Plaintiffs' Complaint is not a shotgun pleading. .......................................21

V.    CONCLUSION............................................................................23

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*AlertPoint, LLC v. Dean OLDS*,
   No. 1:18-CV-03879-ELR, ECF No. 187 (N.D. Ga. July 9, 2020) ...................21

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   571 U.S. 49 (2013) ...........................................................................................11

*Beckwith v. Bellsouth Telecomms., Inc.*,
   146 F. App'x 368, 371 (11th Cir. 2005). ...................................................21, 22

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
   408 F.3d 1349 (11th Cir. 2005) ........................................................................6

*Colo. Project-Common Cause v. Anderson*,
   495 P.2d 220 (Colo. 1972) ..............................................................................16

*Cook v. Gralike*,
   531 U.S. 510 (2001) .........................................................................................20

*Democratic Nat'l Comm. v. Hobbs*,
   948 F.3d 989 (9th Cir. 2020) ...........................................................................19

*Democratic Party of Ga., Inc. v. Crittenden*,
   347 F. Supp. 3d 1324 (N.D. Ga. 2018) ............................................................10

*Democratic Party of Ga., Inc. v. Raffensperger*,
   No. 1:19-cv-5028-WMR, ECF No. 56-1 (N.D. Ga. Mar. 6, 2020) ...................10

*Fla. ex rel. Att'y Gen. v. U.S. Dep't of Health & Human Servs.*,
   648 F.3d 1235 (11th Cir. 2011), *aff'd in part, rev'd in part sub
   nom. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)......................4

*Gonsalves - Carvalhal v. Aurora Bank, FSB*,
   No. 1:14-CV-00151-SCJ-LTW, 2015 U.S. Dist. LEXIS 181889
   (N.D. Ga. Feb. 9, 2015) ..................................................................................13

*Grizzle v. Kemp*,
   634 F.3d 1314 (11th Cir. 2011) ........................................................................8

# TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE(S)**

*Harper v. Virginia State Bd. of Elections*,
    383 U.S. 663 (1966) ............................................................................... 19

*Harris v. Fla. Elections Canvassing Comm'n*,
    122 F. Supp. 2d 1317 (N.D. Fla. 2000), *aff'd sub nom. Harris v.*
    *Fla. Elections Comm'n*, 235 F.3d 578 (11th Cir. 2000) .................................... 19

*Jacobson v. Fla. Sec'y of State*,
    957 F.3d 1193 (11th Cir. 2020) ..................................................................... 8, 9

*Jolicoeur v. Mihaly*,
    488 P.2d 1 (Cal. 1971) ................................................................................ 16

*League of Women Voters of Fla., Inc., v. Detzner*,
    314 F. Supp. 3d 1205 (N.D. Fla. 2018) .......................................................... 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 4

*Martin v. Kemp*,
    341 F. Supp. 3d 1326 (N.D. Ga. 2018), *appeal dismissed sub nom.*
    *Martin v. Sec'y of State of Ga.*, No. 18-14503-GG, 2018 WL
    7139247 (11th Cir. Dec. 11, 2018) ............................................................. 5, 10

*McDonald v. Board of Election Commissioners*,
    394 U.S. 802 (1969) .................................................................................... 14

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
    781. F.3d 1245, 1260 (11th Cir. 2015) ........................................................... 4

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
    993 F.2d 800 (11th Cir. 1993) ....................................................................... 3

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
    140 S. Ct. 1205 (2020) ................................................................................ 19

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) .................................................................... 17, 18, 19

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Tashjian v. Republican Party of Conn.*,
    479 U.S. 208 (1986)........................................................................19

*Williams v. Rhodes*,
    393 U.S. 23 (1968)..........................................................................18

*Worden v. Mercer Cty. Bd. of Elections*,
    294 A.2d 233 (N.J. 1972)................................................................15

CONSTITUTION AND STATUTES

U.S. Const. amend I ..............................................................................2

U.S. Const. amend XIV .....................................................................2, 3

U.S. Const. amend. XV ......................................................................15

U.S. Const. amend. XXVI...................................................................15

U.S. Const. amend. XXVI, §1.............................................................17

U.S. Const., art. I, § 4, cl. 1 ...............................................................17

28 U.S.C. § 1391.........................................................................11, 12

28 U.S.C. § 1391(b) ....................................................................11, 13

52 U.S.C. § 10508.................................................................................3

O.C.G.A. § 21-2-380(b) .......................................................................5

O.C.G.A. § 21-2-381(b)(4) ..................................................................2

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) ..............................................................................4

Yael Bromberg, Youth Voting Rights and the Unfulfilled Promise of
    the Twenty-Sixth Amendment, 21 U. Pa. J. Const. L. 1105 (2019)..................15

## I.    INTRODUCTION

Absentee voting by mail will play an unprecedented role in this year's elections because of the ongoing COVID-19 pandemic. And as the nation witnessed on June 9, Georgia's absentee regime—which resulted in thousands of voters being forced to risk their health and wait in hours-long lines when their absentee ballots arrived too late or not at all—needs to change. The Constitution does not allow Georgia to operate an absentee regime that is guaranteed to burden and disenfranchise an untold number of voters, particularly in the coming election in which the severity of the burden imposed by the Notification Process, Absentee Age Restriction, Postage Tax, Receipt Deadline, and Voter Assistance Ban will be exacerbated and impact a broad number of voters as they shift to mail voting due to COVID-19. Georgia election officials should not want that either.

Nevertheless, much like the State Defendants (the "State"), the County Defendants (the "Counties") largely disclaim responsibility for Plaintiffs' injuries, dismiss the disenfranchisement and discrimination of Georgians as a "minimal 'burden,'" and seek dismissal on unavailing procedural grounds. But Georgia's statutes clearly establish that both the State and Counties have responsibilities over the challenged laws such that this Court can order effective relief, venue is proper, and Plaintiffs have standing. Moreover, the Counties' arguments against Plaintiffs'

undue burden and Twenty-Sixth Amendment claims are not supported by the law. As such, the Court should deny the Counties' Consolidated Motion to Dismiss ("Motion"). *See* ECF No. 82 ("Motion").

## II.    BACKGROUND

On June 3, 2020, Plaintiffs filed their First Amended Complaint ("Complaint"), *see* ECF No. 33 ("Compl."), challenging five provisions of Georgia law: (1) the lack of standards governing the process for notifying voters regarding incomplete absentee ballot applications ("Notification Process"), O.C.G.A. § 21-2-381(b)(4); (2) the age restriction on those who are allowed to submit one application to vote by mail for an entire election cycle, ("Absentee Age Restriction"), *id.* § 21-2-381(a)(1)(G); (3) the failure to provide prepaid postage on absentee ballot envelopes ("Postage Tax"); (4) the rejection of absentee ballots unless received by 7:00 p.m. on Election Day ("Receipt Deadline"), *id.* § 21-2-386(a)(1)(F); and (5) Georgia's prohibition on third-party assistance for collecting absentee ballots ("Voter Assistance Ban"), *id.* § 21-2-385(a).

Plaintiffs allege that: (1) the challenged laws impose an undue burden on the right to vote in violation of the First and Fourteenth Amendments; (2) the Absentee Age Restriction facially discriminates on the basis of age in direct contravention of the Twenty-Sixth Amendment; (3) the Postage Tax operates as an unconstitutional

tax on voting under the Twenty-Fourth and Fourteenth Amendments; (4) the Notification Process and Receipt Deadline violate voters' procedural due process rights under the Fourteenth Amendment; (5) the Notification Process allows different counties to apply different standards to notify voters of issues with their absentee ballot applications in violation of the Equal Protection Clause of the Fourteenth Amendment; (6) the Voter Assistance Ban represents an overbroad restriction on political speech and associational rights under the First and Fourteenth Amendments; and (7) the Voter Assistance Ban conflicts with and violates Section 208 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10508. These claims were lodged against all Defendants.

On June 10, 2020, Plaintiffs filed a Motion for Preliminary Injunction. *See* ECF No. 57 ("PI Mot."). On June 26, the State and the Counties filed Motions to Dismiss, arguing that Plaintiffs lack standing, that the claims are not traceable to the State and the Counties or redressable by the Court, and that Plaintiffs have not stated claims for relief, among other arguments. *See* ECF No. 82-1 ("Cty. Mot."); ECF No. 83-1 ("State Mot."). As shown herein and in Plaintiffs' Response in Opposition to the State Defendants' Motion to Dismiss ("State Opposition" or "State Opp."), they are unfounded and should be dismissed.

### III.   LEGAL STANDARD

"When the defendant challenges standing via a motion to dismiss, both trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) (quotations and citations omitted). Under the liberal pleading standard of Federal Rule of Civil Procedure 8(a), to survive a motion to dismiss "the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (citations omitted). Additionally, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct" suffice to establish standing, because the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted). Further, "the law is abundantly clear that so long as at least one plaintiff has standing to raise each claim," the case may proceed and the court "need not address whether the remaining plaintiffs have standing." *Fla. ex rel. Att'y Gen. v. U.S. Dep't of Health & Human Servs.*, 648 F.3d 1235, 1243 (11th Cir. 2011), *aff'd*

*in part, rev'd in part sub nom. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012).

## IV.   ARGUMENT

**A.   Plaintiffs have standing.**

**1.   The Voter Plaintiffs have alleged injuries-in-fact.[1]**

For the reasons stated in the State Opposition, Plaintiffs allege sufficient injuries-in-fact to have standing to challenge the Notification Process, Absentee Age Restriction, Postage Tax, Receipt Deadline, and Voter Assistance Ban. State Opp. at 4-8.

Much like the State, the Counties wrongly assert that the Voter Plaintiffs (1) lack standing because voting absentee is not a right, and (2) their injuries are speculative. But Georgia has conferred the right to vote absentee, O.C.G.A. § 21-2-380(b), and must administer absentee voting, once conferred, in a constitutional manner. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018), *appeal dismissed sub nom. Martin v. Sec'y of State of Ga.*, No. 18-14503-GG, 2018 WL 7139247 (11th Cir. Dec. 11, 2018). As such, the Voter Plaintiffs who have alleged that they intend to vote absentee have standing to challenge the burdens imposed by

---

[1] By "Voter Plaintiffs," and as in the State Opposition, Plaintiffs refer to Plaintiffs Jennings, Woodall, and Pyne.

the laws governing the absentee voting regime. *See* State Opp. at 6-8.  This is particularly true under current circumstances, where they allege that they cannot safely vote otherwise. *See* Compl. ¶¶ 20-22.

Moreover, the Voter Plaintiffs' injuries are not speculative. Contrary to the Counties' assertion, it is of no consequence that there are other methods by which the Voter Plaintiffs can cast their ballots, and voters need not allege complete disenfranchisement—or in the case of Plaintiff Jennings, for example, complete inability to buy stamps, Cty. Mot. at 8—to demonstrate injury.[2] *See, e.g.*, *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("A plaintiff need not have the franchise wholly denied to suffer injury."). Allegations of burden or abridgment on their right to vote by being subject to the challenged law are sufficient to confer standing, *see* State Opp. at 6-7, and there are ample allegations of this in the Complaint, all of which must be accepted as true at this stage. *See* State Opp. at 19-24 (discussing burdens related to Plaintiffs' *Anderson-Burdick* claims).

---

[2] The Counties' assertion that Plaintiff Pyne has failed to plead injury-in-fact as to the Election Day Receipt Deadline, *see* Cty. Mot. at 8, is perplexing given that she has been previously disenfranchised by the Deadline. Compl. ¶ 22. Asserting that Plaintiff Jennings is "speculat[ing]" as to the difficulties of buying stamps, *see* Cty. Mot. at 7, is similarly remarkable because Plaintiff Jennings alleges that she had to travel to the post office on at least three different occasions mere months ago to purchase stamps for Georgia's most recent June 9, 2020 primary election ("June Primary"). Compl. ¶ 20.

Separately, to the extent the Counties assert that the Voter Plaintiffs cannot be injured by the Postage Tax because the U.S. Postal Service ("USPS") will deliver ballots without postage, Cty. Mot. at 8 n.3, this is also misguided. At the outset, Plaintiffs do not concede that this policy is always followed, but even if it were, and no voter was disenfranchised for failure to affix sufficient postage, Plaintiffs would still have standing to challenge the Postage Tax. Plaintiffs have alleged that there are monetary and transaction costs to securing postage, *see* Compl. ¶¶ 5, 8, 19-22, 57-64, 104-107, which is an injury in itself even if, for example, a voter's ballot is ultimately delivered because it had one Forever stamp and not two.

Had Plaintiffs alleged that all voters were well-aware of this supposed USPS policy, or that the State and Counties publicized that mail ballots do not actually require postage to be delivered, this might be a different claim. But, as Plaintiffs have alleged, Defendants represent to voters that postage is required to send back a ballot. *See* Compl. ¶ 57 (citing Ga. Sec'y of State Elections Div., *Absentee Voting: A Guide for Registered Voters*, at 5 (2020), https://sos.ga.gov/admin/ uploads/Absentee_Voting_Guide_20142.pdf ("If mailing, you must affix postage to the ballot envelope.")); *see also* PI Mot. at 7 (demonstrating same).  As such, Plaintiffs have sufficiently alleged injury-in-fact.

2. **All Plaintiffs have adequately alleged traceability and redressability.**

The Counties' argument that Plaintiffs have not adequately alleged traceability and redressability also fails. As an initial matter, the Counties do not dispute that Plaintiffs' injuries from the challenged provisions are traceable to or can be redressed by them. Cty. Mot. at 10 ("Plaintiffs affirmatively plead—correctly—that county officials bear the responsibility of processing absentee ballots."). Rather, they assert that an order from this Court will result in Plaintiffs' claims being redressed in a piecemeal fashion since not all 159 Georgia counties are parties. *Id.* at 10-12.

But this argument is unavailing. The Complaint is not lodged solely against the Counties. It also names the Secretary of State and all members of the Georgia State Election Board as Defendants. And, as alleged, they have the power to fully redress Plaintiffs' injuries statewide, ensuring the uniform administration of Georgia's elections. *See* Compl. ¶¶ 23-25, Prayer for Relief (A-L). Indeed, "[t]he Secretary is a state official subject to suit in his official capacity because his office 'imbues him with the responsibility to enforce the [election laws].'" *Id.* ¶ 23 (quoting

*Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011)).[3] He is also the chief elections officer responsible for the administration of voting laws, including absentee voting; he is responsible for publishing instructions on absentee voting, including instructions about payment of postage; and as chair of the State Election Board he ensures uniform election practice in Georgia. *Id.*

Similarly, "members of the State Election Board in Georgia, [are] responsible for 'promulgat[ing] rules and regulations so as to obtain uniformity in the practices and proceedings of superintendents, registrars, deputy registrars, poll officers, and other officials, as well as the legality and purity in all primaries and elections.'" Compl. ¶ 24 (quoting O.C.G.A. § 21-2-31(1)); *see also id.* ("the State Election Board 'promulgate[s] rules and regulations to define uniform and nondiscriminatory standards concerning what constitutes a vote and what will be counted as a vote for each category of voting system' in Georgia." (quoting O.C.G.A. § 21-2-31(7)). Thus, there is no question that if this Court were to award the relief Plaintiffs seek, under

---

[3] Contrary to the Counties' claim, *Grizzle* is still good law after *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193 (11th Cir. 2020), discussed *infra* 9, and, indeed, should carry far more weight with this Court as it directly addresses the power of the Georgia Secretary of State. In contrast, *Jacobson* considers the powers afforded to the Florida Secretary of State under Florida state law. *See infra* 9. The state law governing these positions, as well as the underlying laws challenged in each suit, are distinct.

its uniformity powers the State could promulgate all instructions, rules, and regulations necessary to effectuate this Court's decision and fully redress Plaintiffs' injuries in every county in Georgia.

*Jacobson v. Florida Secretary of State*, 957 F.3d 1193 (11th Cir. 2020), upon which the Counties rely, does not call this into question. In *Jacobson*, the court considered an appeal from a challenge to Florida's ballot order laws. *Id.* at 1197. After reviewing Florida state law, the court found that Florida law did not imbue the Florida Secretary of State with enough power to redress the plaintiffs' injuries. *Id.* at 1208. The court explained that Florida's county level election officials were not subject to the Secretary of State's control under Florida law, noting that under Florida law the Secretary "must resort to judicial process" to enforce the county officials' duties. *Id.*

Georgia law, however, is materially different from Florida law, granting the State broad powers to ensure uniformity in the administration of election laws across the state and numerous mechanisms—e.g., instructions, rules, regulations—with which to do that. *See supra* 8-9. Accordingly, if this Court were to rule in Plaintiffs' favor, then it could order statewide relief as it has many times before, and there is

no risk that entities outside of this suit will be improperly enjoined.[4] *See, e.g.*, *Democratic Party of Ga., Inc. v. Raffensperger*, No. 1:19-cv-5028-WMR, ECF No. 56-1 at 2-4 (N.D. Ga. Mar. 6, 2020) (the State entering into statewide settlement related to absentee ballot rejection notification procedures and signature matching); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1339–40 (N.D. Ga. 2018) (enjoining Georgia's signature match law and ordering the Secretary to issues instructions to county officials applying statewide.); *Democratic Party of Ga., Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1341 (N.D. Ga. 2018) (finding that a challenge to Georgia's absentee procedures was redressable by enjoining the Secretary of State).

Even ignoring that the State can sufficiently redress Plaintiffs' (and particularly The New Georgia Project's ("NGP")) injuries with statewide relief, as alleged, the counties in which the Voter Plaintiffs live or are registered to vote have also been named as Defendants. Thus, those individual counties—Fulton and Gwinnett, both of which are parties to this suit—can fully redress the Voter

---

[4] Moreover, the argument that a plaintiff must name as defendants every one of the 159 counties, or maybe even every member of the county boards of registrars or elections of all 159 counties to challenge an election law is as unreasonable as it is impracticable. If this were the law, it would result either in effectively preventing Georgia citizens from access to the courts to address constitutional claims for voting or utter chaos on this Court's docket by naming potentially hundreds of county defendants in every statewide election dispute. That is neither necessary, given Georgia's significantly different election administration structure, nor appropriate.

Plaintiffs' injuries. *See* Compl. ¶ 20 (Plaintiff Jennings registered voter in Fulton County); *id.* ¶ 21 (Plaintiff Woodall registered voter in Fulton County); *id.* ¶22 (Plaintiff Pyne registered voter in Gwinnett County). Thus, the Counties' argument fails on this front as well.[5]

**B.      Venue over the Counties is proper.**

The Counties' assertion that venue is not proper also misses the mark. Venue in federal court is governed by 28 U.S.C. § 1391, which provides, in pertinent part, that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b); *see also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) (explaining that the question of whether venue is "wrong" or "improper" "is generally governed by 28 U.S.C. § 1391."). Local Rule 3.1 tracks this provision, providing that venue is proper where a suit is brought in the "division of the district wherein the activity occurred," and "in the division where the defendant or defendants reside." LR 3.1, NDGa.

---

[5] If the Court finds that the Georgia counties that are absent in this proceeding are, in fact, necessary to accord complete relief among the existing parties—an assertion to which Plaintiffs do not acquiesce—then Plaintiffs respectfully request an opportunity to join the missing Georgia counties to this proceeding.

Here, this suit was brought in the Northern District of Georgia in the Atlanta Division, which encompasses Fulton County. Plaintiffs Jennings and Woodall have alleged that they reside in and are registered voters in Fulton County (while Plaintiff Pyne also alleges she is a registered voter in a county encompassed in the Northern District), and NGP has alleged that it is headquartered in Fulton County. Compl. ¶ 15. All Plaintiffs allege that "a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district." *Id.* Accordingly, venue is proper here under both 28 U.S.C. § 1391 and Local Rule 3.1.

Moreover, even if a substantial part of the events giving rise to Plaintiffs' claim had not occurred in this judicial district, the Secretary of State is a Defendant in this action, and his office is located in Atlanta. Likewise, members of the boards of elections for Clayton, Cobb, DeKalb, Douglas, Fayette, Forsyth, Fulton, Gwinnett, Henry, Newton, and Rockdale Counties are also Defendants and, per this Court's rules, are properly sued in this judicial district. Given that all other Defendants are also located in Georgia, venue is proper in this judicial district as a district "in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b). That Plaintiffs "have cast an incredibly wide net" by including Defendants in other counties does not change this

analysis. Cty. Mot. at 23. Whether Plaintiffs cast a wide net is simply not relevant to the question of whether venue is proper. *See* 28 U.S.C. § 1391(b).

Finally, the Counties' reliance on *Gonsalves - Carvalhal v. Aurora Bank, FSB*, No. 1:14-CV-00151-SCJ-LTW, 2015 U.S. Dist. LEXIS 181889, at *17 (N.D. Ga. Feb. 9, 2015), is misplaced. In *Gonsalves*, the court considered whether venue in the Northern District of this Georgia was proper as to the Aurora defendants who maintained their residence *in New York*. *Id.* at *8. The facts and law at issue in *Gonsalves* are not relevant because the question here is whether this district is a proper venue for an action involving multiple defendants, all of whom reside *in Georgia* and several of whom are unquestionably located within the jurisdiction of this Court. The answer is emphatically in the affirmative.

## C. Plaintiffs sufficiently state a claim regarding the Absentee Age Restriction.

The Counties' Absentee Age Restriction argument suffers from the same misunderstanding of the law and misreading of the facts that the State's Motion does. As such, Plaintiffs incorporate by reference the arguments made in the State Opposition herein. *See* State Opp. at 20-21, 32-33.

Contrary to the Counties' assertion, *McDonald v. Board of Election Commissioners*, 394 U.S. 802 (1969), is not controlling here, nor is the rational basis standard it applies. As explained *supra* 5, Georgia has conferred the right to vote

absentee on all citizens and, as such, it must be administered constitutionally. This is particularly true where, as alleged, absentee voting will be many Georgians' only safe way to exercise the franchise in November. Thus, a rational basis standard does not apply to Plaintiffs' right to vote claim. Rather, the same flexible *Anderson-Burdick* balancing test that applies to all infringements on the right to vote applies to Georgia's Absentee Age Restriction. *See* State Opp. at 17-18. And, as alleged, the burden imposed by the Absentee Age Restriction is anything but minimal, *see* State Opp. at 20-21; Compl. ¶¶ 7, 18, 21-22, 46-56, 111, as such rational basis does not apply.[6]

Moreover, *McDonald* decided an Equal Protection Clause claim, not a Twenty-Sixth Amendment claim. 394 U.S. at 806. Thus, its reasoning is neither persuasive nor controlling in the context of a Twenty-Sixth Amendment claim as the Counties assert. *See* Cty. Mot. at 15. Indeed, although commonly known as the Amendment that lowered the voting age to 18, the Twenty-Sixth Amendment's text is far more expansive and reflects that its goal "was not merely to empower voting by our youths but . . . affirmatively to encourage their voting, through the elimination of unnecessary burdens and barriers, so that their vigor and idealism could be

---

[6] As discussed at length in Plaintiffs' State Opposition, determinations under the *Anderson-Burdick* framework are also improper at the motion to dismiss stage because the balancing test required is inherently factual. *See* State Opp. at 15-17.

brought within rather than remain outside lawfully constituted institutions." *Worden v. Mercer Cty. Bd. of Elections*, 294 A.2d 233, 243 (N.J. 1972). For example, consistent with this history, the Twenty-Sixth Amendment tracks the language of the Fifteenth Amendment (not the Fourteenth), which forbids efforts to deny or abridge the right to vote on account of race. *Id.*; *compare* U.S. Const. amend. XXVI, with U.S. Const. amend. XV; *see also* Yael Bromberg, Youth Voting Rights and the Unfulfilled Promise of the Twenty-Sixth Amendment, 21 U. Pa. J. Const. L. 1105, 1123-34 (2019) (explaining the legislative history of the Twenty-Sixth Amendment). Moreover, the Senate Report referring the Twenty-Sixth Amendment to the states for ratification, explained:

> [F]orcing young voters to undertake special burdens – obtaining absentee ballots, or traveling to one location in each city, for example – in order to exercise their right to vote might well serve to dissuade them from participating in the election. This result, and the election procedures that create it, are at least inconsistent with the purpose of the Voting Rights Act, which sought to encourage greater political participation on the part of the young; such segregation might even amount to a denial of their 14th Amendment right to equal protection of the laws in the exercise of the franchise.

> S. REP. NO. 92-26, at 14 (1971) (emphasis added) (accompanying S.J. Res. 7, 92d Cong. (1971)).

Thus, a state similarly cannot constitutionally target young voters with special burdens that make it harder for them to access the franchise, which is precisely what the State has done here. Because of the discriminatory nature of these actions, that

is precisely why heightened scrutiny, not rational basis review, must be applied as set out in Plaintiffs' Complaint. *See e.g.*, *League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1221-23 (N.D. Fla. 2018) (holding law prohibiting early voting on college campuses is "facially discriminatory" in violation of the Twenty-Sixth Amendment as  "[i]t is unexplainable on grounds other than age because it bears so heavily on younger voters than all other voters"); *Colo. Project-Common Cause v. Anderson*, 495 P.2d 220, 221 (Colo. 1972) (applying heightened scrutiny to invalidate, pursuant to the Twenty-Sixth Amendment and the state constitution, age-based restrictions on the right to circulate and sign referenda petitions); *Jolicoeur v. Mihaly*, 488 P.2d 1, 2 (Cal. 1971) (applying heightened scrutiny to invalidate, pursuant to the Twenty-Sixth Amendment, a state policy that allowed only unmarried minors to register to vote from their parents' addresses rather than their college addresses).

Even so, whether strict scrutiny or a rational-basis review applies, Plaintiffs' Complaint sufficiently pleads a claim under the Twenty-Sixth Amendment. Plaintiffs allege facts that show the Absentee Age Restriction discriminates on account of age, and it does so for no reason. Compl. ¶¶ 7, 46-56, 113, 115, 132, 138, 139-46. The law does not require more from Plaintiffs.

The Counties' additional arguments with respect to the Twenty-Sixth Amendment are similarly unavailing. The Counties assert that Plaintiffs have failed to plead that the Absentee Age Restriction *denies* or *abridges* younger individuals' right to vote and instead pleaded only that it *restricts* the right to vote. *See* Cty. Mot. at 14-15. This argument is non-sensical. A restriction on the right to vote is necessarily an abridgement on that right. Further, to the extent the Counties are taking the misinformed position that government actions that infringe younger individuals' right to vote are constitutional as long as such actions do not entirely prohibit younger individuals from voting, they are incorrect. The plain language of the Twenty-Sixth Amendment provides that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote, shall not be denied *or abridged* . . . any State *on account of age*." U.S. Const. amend. XXVI, §1 (emphasis added). Thus, it is obvious that alleging a burden short of disenfranchisement is sufficient to state a claim.

**D.**    **Plaintiffs' claims are justiciable and do not raise political questions.**

The Counties primarily rely on two authorities—the Supreme Court's recent decision regarding partisan gerrymandering cases in *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), and Art. I, § 4, cl. 1 of the United States Constitution (the "Elections Clause")—for their unfounded assertion that Plaintiffs' claims, which

challenge the legality of Georgia election laws, amount to non-justiciable political questions. *See* Cty. Mot. at 16-20. They are wrong in both regards.

The Counties' reliance on *Rucho* to assert that partisan gerrymandering cases are much like this case ignores the facts, issues, and narrow holding of that case. *Rucho* held that partisan redistricting claims present political questions beyond the reach of federal courts because of the Court's inability to identify a judicially manageable standard for resolving those particular types of claims. *See* 139 S. Ct. at 2494. This was not for want of trying. Partisan gerrymandering claims had been in search of a judicially manageable standard for decades, but the Court repeatedly "struggled without success" to identify one. *Id.* at 2491. By the time *Rucho* came before it, the Court "ha[d] never struck down a partisan gerrymander as unconstitutional—despite various requests over the past 45 years." *Id.* at 2507.

In contrast, the Supreme Court and lower federal courts have been ably deciding precisely the types of claims that Plaintiffs bring here—without violating the political question doctrine—for decades. In fact, the Supreme Court explicitly rejected an argument markedly similar to the one the Counties raise here. *See Williams v. Rhodes*, 393 U.S. 23, 28 (1968) (holding in ballot access case that "Ohio's claim that the political-question doctrine precludes judicial consideration of these cases requires very little discussion [and] [t]hat claim has been rejected in cases

of this kind numerous times"). *Rucho* provides no indication that the Supreme Court has changed its mind. And, in the meantime, federal courts have proceeded to decide all manner of voting rights challenges outside the partisan gerrymandering context, including claims on ballot collection bans and election day receipt deadlines. *See e.g.*, *Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989, 1037 (9th Cir. 2020) (enjoining Arizona's voter assistance ban); *Harris v. Fla. Elections Canvassing Comm'n*, 122 F. Supp. 2d 1317, 1323 (N.D. Fla. 2000) (rejecting plaintiff's argument that, under Florida law, all military-overseas ballots received after 7:00 p.m. election day must be discarded, and holding that Florida's contrary return deadline was preempted by federal law), *aff'd sub nom. Harris v. Fla. Elections Comm'n*, 235 F.3d 578 (11th Cir. 2000). What is more, this year (and therefore after *Rucho*) the Supreme Court considered an election day receipt deadline challenge and imposed a postmark deadline. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1208 (2020).

This Court can similarly dispense with the Counties' argument that the Elections Clause somehow makes state election laws immune from suit. History disagrees. *See, e.g.*, *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 664–65 (1966) (invalidating Virginia's poll tax requirement as unconstitutional). "The power to regulate the time, place, and manner of elections does not justify, without

more, the abridgment of fundamental rights, such as the right to vote." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). Indeed, the Supreme Court has held that the Elections Clause is "not a source of power to . . . favor or disfavor a class of candidates." *Cook v. Gralike*, 531 U.S. 510, 523 (2001) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833-34 (1995)). Nor is it a source of power to evade judicial review of laws that burden voting rights.

In sum, the Counties' argument that Plaintiffs' claims are non-justiciable political questions is contradicted by a half-century's worth of voting rights precedent. The Court should reject this baseless argument out of hand.

## E.     Plaintiffs' Complaint is not a shotgun pleading.

The Counties' arguments that Plaintiffs' Complaint is a "shotgun pleading" are also unavailing. The Counties assert that "it is virtually impossible to determine which specific allegations Plaintiffs intend to assert against most of the County Defendants." Cty. Mot. at 21. But that is not true.

Plaintiffs allege (and the Counties agree) that the County Defendants are responsible for administering elections in their respective counties according to the laws set out by the State and the rules, regulations, and interpretations set forth by the Secretary and State Election Board, including the processing, distribution, and counting of absentee ballots. Compl. ¶ 26 (citing O.C.G.A. §§ 21-2-40(a), 21-2-

381(b)(1), 21-2-386(a)(1)(B), 21-2-386(a)(1)(C); Ga. Comp. R. and Regs. ¶ 183-1-14-13); s*ee also* Cty. Mot. at 10. This necessarily includes the implementation and administration of the five Georgia laws that Plaintiffs challenge in this suit. Plaintiffs have also alleged that NGP is injured by these laws and operates statewide, including in the counties that are named as Defendants. Compl. ¶ 17. Accordingly, all claims, counts, and allegations are made against all of the Counties.[7] *See* Compl. ¶¶ 5, 26, 126-180, Prayer for Relief (H-L) (asking the Court to enjoin all County Defendants from enforcing the challenged provisions). That specific facts regarding operations in some counties are highlighted in the body of the Complaint does not undermine or confuse the fact that all counties are responsible for administering the challenged provisions and, as a result, are Defendants on every claim. As a result, each Defendant has "sufficient clarity" "to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).

Comparing Plaintiffs' Complaint to the complaint that this Court recently dismissed to be repleaded in *AlertPoint, LLC v. Dean OLDS*, No. 1:18-CV-03879-ELR, ECF No. 187 (N.D. Ga. July 9, 2020), is productive. *AlertPoint*, for example,

---

[7] Plaintiffs acknowledge that the Voter Plaintiffs are not lodging claims against counties where they are not registered to vote. As such, Plaintiffs Jennings and Woodall only assert claims against Fulton County and the State, and Plaintiff Pyne asserts claims against Gwinnett County and the State.

featured fifteen claims alleged inconsistently against three separate defendants, all of which referred to various factual allegations in a non-specific manner. *Id.* at 5-6. Here, Plaintiffs' Complaint includes seven claims that are *all* alleged against *all* Defendants, and each claim specifically identifies which of the five challenged provisions of Georgia law is at issue. *See* Compl. ¶¶ 126-80. Additionally, Plaintiffs specifically link each of the seven claims to the factual allegations in the Complaint by identifying which challenged provision(s) are being discussed throughout the pleading. *See id.* ¶¶ 1-11, 17-125. Thus, Plaintiffs' Complaint is not a verboten shotgun pleading, and their claims are properly pleaded.[8]

## V.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request this Court deny the Counties' Consolidated Motion to Dismiss on all grounds.

---

[8] Were this Court to find that the Complaint lacks clarity, however, Plaintiffs respectfully request an opportunity to amend or replead the Complaint, as the Court ordered in *AlertPoint*, which as the Counties' own cases illuminate, is the proper recourse in such instances. *See e.g.*, *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (remanding a district court's dismissal of a shotgun pleading because the proper disposition requires the plaintiff to replead the complaint under Rule 12(e), not a dismissal under Rule 12(b)(6)); *Beckwith*, 146 Fed. Appx. at 371 (11th Cir. 2005) (finding that the district court did not abuse its discretion when it ordered litigant who filed a shotgun pleading to file a more definite statement).

Dated:  July 10, 2020

**<u>Adam M. Sparks</u>**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
**KREVOLIN AND HORST, LLC**
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
K'Shaani Smith*
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
ACallais@perkinscoie.com
KShaaniSmith@perkinscoie.com

Kevin J. Hamilton*
Stephanie R. Holstein*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
KHamilton@perkinscoie.com
SHolstein@perkinscoie.com

Lilian Timmermann*
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5222
Telephone: (303) 291-2354
Facsimile: (303) 291-2454
LTimmermann@perkinscoie.com

Christian R. Ruiz
Georgia Bar No. 548611
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (602) 351-8417
Facsimile: (602) 648-7417
CRuiz@perkinscoie.com

Counsel for Plaintiffs
*Admitted Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| THE NEW GEORGIA PROJECT, REAGAN JENNINGS, CANDACE WOODALL, and BEVERLY PYNE,<br><br>    Plaintiffs,<br><br>        v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State and the Chair of the Georgia State Election Board, *et al*.<br><br>    Defendants. | Civil Action File No. 1:20-cv-01986-ELR |

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this document has been prepared using 14-point Times New Roman font.

Dated: July 10, 2020

                                             **Adam M. Sparks**
                                             *Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THE NEW GEORGIA PROJECT,
REAGAN JENNINGS, CANDACE
WOODALL, and BEVERLY PYNE,

     Plaintiffs,

         v.

BRAD RAFFENSPERGER, in his official
capacity as the Georgia Secretary of State
and the Chair of the Georgia State Election
Board, *et al*.

     Defendants.

Civil Action File No.
1:20-cv-01986-ELR

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

Dated: July 10, 2020                    **<u>Adam M. Sparks</u>**
                                     *Counsel for Plaintiffs*