IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE NEW GEORGIA PROJECT,
*et al.*,

  Plaintiffs,

v.

BRAD RAFFENSPERGER, in his
official capacity as the Georgia
Secretary of State and the Chair of
the Georgia State Election Board,
*et al.*,

  Defendants.

Civil Action File No.

1:20-cv-01986-ELR

## STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

The State Defendants file this reply brief in support of their Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion"), [Doc. 83], further showing the Court as follows.[1]

## I. Standing.

### A.  The Individual Plaintiffs

Plaintiffs agree that this is not a case where someone will not be able to vote absent the wholesale rewriting of Georgia law they seek.  [Doc. 96 at 15-

---

[1] The State Defendants adopt the abbreviations from their Brief in Support of the Motion to Dismiss.  [Doc. 83-1.]

16.]  To the contrary, Plaintiffs concede that the Individual Plaintiffs "allege that they will [each] vote absentee in Georgia this year."  [Id. at 4.]  Thus, they have no injury, because no Individual Plaintiff has alleged a "likelihood that [she] will be affected by the allegedly unlawful conduct in the future." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328–29 (11th Cir. 2013).  Nor has any Individual Plaintiff alleged an injury that is "concrete, particularized and actual or imminent," Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013), or an injury that is not common to all members of the public.  Gardner v. Mutz, 962 F.3d 1329, 1342 (11th Cir. 2020).

Instead, the Individual Plaintiffs, who have raised generalized grievances, impermissibly attempt to use this lawsuit "simply as a vehicle for the vindication of value interests" that are different from those of state policymakers.  Id.  No Individual Plaintiff even claims that, or states how, they will be negatively impacted by the Absentee Applicant Notification Process in requesting an absentee ballot (Pyne and Woodall only); currently lack stamps or the ability to purchase them; or will be penalized by the Absentee Ballot Security Statute.  At the very least, Plaintiffs are limited to facial challenges to statutes, which fail if those statutes can be applied in a

constitutional manner.² Wash. State Grange v. Wash. State GOP, 552 U.S. 442, 455 (2008).

**B.    The Organizational Plaintiff**

Plaintiff NGP has also failed to sufficiently allege either associational standing or organizational standing.  Doc. No. [33, ¶¶ 17-19.]  NGP must have "members" for associational standing.  See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 344 (1977) (requiring "indicia of membership").  Indicia of membership includes members who "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." Tex. Indigen. Council v. Simpkins, No. 5:11-cv-315, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014).  NGP has not alleged facts showing they have such members.

NGP claims it has "constituents," Doc. No. [33], ¶¶ 17-19, but there are no allegations that its "constituents" have any role in NGP's organizational efforts.  NGP's constituents are voters who are generally "African American, lower income, and also at high risk for COVID-19 complications."  [Id., ¶ 19.] NGP's constituents—voters who are served by NGP—do not qualify as

---

² Plaintiffs cite Obama for America v. Husted, 697 F.3d 423, 431 (6th Cir. 2012), but the opinion does not address standing.

members for associational standing.  See NE Ohio Coal. for Homeless v. Blackwell, 467 F.3d 999, 1010 n.4 (6th Cir. 2006) ("[The plaintiff] seeks to assert a form of representational standing never recognized by any court— standing on behalf of the group served by the organization.").

NGP also fails to establish organizational standing.  Plaintiffs concede a diversion theory requires allegations that NGP is impaired in its "ability to engage in its own projects."  [Doc. 96 at 18 (citing Arcia v. Fla Sec'y of State, 772 F.3d 1335, 1341 (11th Cir. 2014)).]  NGP does not dispute that its only impairment will be continuing fulfilling its mission of educating voters on the decades-old law they challenge.  [Id. at 18-20.]  NGP still has not identified "what activities [NGP] would divert resources away from."  Jacobson v. Fla. Sec'y of State, 957 F.3d 1193 (11th Cir. 2020).  Instead, NGP attempts to escape the impact of Jacobson by insisting that committing resources is the same as diverting them.  [Doc. 96 at 18-19.]  This argument misses the more fundamental point of Jacobson, which cited examples of organizations shifting resources away from core missions. 957 F.3d at 1206.  NGP has alleged nothing of the sort.  This cannot establish standing in this circuit, particularly after Gardner and Jacobson.

## II.   Plaintiffs' *Anderson-Burdick* Claims Generally.

Relying almost exclusively on Duke v. Cleland, 5 F.3d 1399, 1402 (11th

Cir. 1993), Plaintiffs dedicate significant text to the idea that a motion to dismiss is improper when applying the <u>Anderson-Burdick</u> analysis.  <u>See</u> Doc. No. [96 at 25-26 (citing <u>Duke</u>, 5 F.3d at 1402.]  This idea is easily dismissed by reviewing the full history of the <u>Duke</u> litigation.  Three years after the initial decision, and when applying the <u>Anderson-Burdick</u> analysis, the Eleventh Circuit granted a motion to dismiss Duke's complaint.  <u>Duke v. Massey</u>, 87 F.3d 1226, 1235 (11th Cir. 1996).  Plaintiffs' argument that they are somehow immune from a motion to dismiss or that this Court "cannot dismiss Plaintiffs' <u>Anderson-Burdick</u> claims . . . without considering an evidentiary record" simply is wrong.  Doc. No. [96 at 26.]

## III.   The Absentee Applicant Notification Statute.

Plaintiffs complain that the Absentee Applicant Notification Statute is unconstitutional because it requires "prompt[]" notification to an absentee applicant of an absentee-ballot application problem, but it would be constitutional if it required notice within three business days.  [Doc. 33 ¶¶ 6, 35-45, 156, 162-66; 96 at 30 n.11.]  This ignores State Election Board ("SEB") Rule 183-1-14-.11, which imposes the exact relief Plaintiffs seek.

Before Plaintiffs commenced this action, the SEB amended a rule addressing absentee-ballot applications, which provides in full:

> The board or clerk shall make such determination and mail or issue official absentee ballots; provisional absentee ballots, if appropriate, *or notices of rejection of absentee ballot applications to such additional applicants within 3 business days after receiving the absentee ballot applications.*

Ga. Comp. R. & Regs. 183-1-14-.11 (emphasis added).[3]  Georgia law thus is as Plaintiffs say it should be.  The Court therefore should dismiss Counts I (to the extent it pertains to the Absentee Applicant Notification Statute), IV, and V as moot.[4]  Nat'l Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005).

Even if this Court does not rule on mootness grounds, this SEB Rule is fatal to Plaintiffs' Anderson-Burdick (Count I) and procedural due process (Count IV) claims.  See Ga. Comp. R. & Regs. 183-1-14-.11.  Any burden imposed by a three-day notice period is, at most, de minimis.  And, Plaintiffs have shown no binding precedent establishing a constitutional right to vote absentee.  McDonald v. Bd. of Election Comm'rs of Chicago, 394 U.S. 802, 807 (1969).  On procedural due process, Plaintiffs have not shown, and cannot

---

[3] Plaintiffs wrongly allege that the rule applies only for notices of rejection for signature mismatch.  [Doc. 103 n.6.]

[4] Mootness is a threshold jurisdictional issue that must be addressed at the outset of a case; it cannot be waived and is always timely.  Fla. Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitation Servs., 225 F.3d 1208, 1227 n.14 (11th Cir. 2000) (citation omitted).

show, that "no set of circumstances exist in which the [law] would be valid."

J.R. v. Hansen, 803 F.3d 1315, 1329 (11th Cir. 2015).  In fact, Plaintiffs

themselves suggest that a law providing such notice would suffice.  Doc. No.

[96, p. 30 n.11.]  Because of the facial nature of Plaintiffs' claim, Count IV

must be dismissed.

Plaintiffs' Equal Protection claim (Count V) fares no better.  Plaintiffs

rely on authority from other circuits that blend an Equal Protection claim

and one arising under an Anderson-Burdick analysis.  But, they cannot

overcome recent, binding authority reaffirming that "[a] successful equal

protection claim under the Fourteenth Amendment requires proof of *both* an

intent to discriminate and actual discriminatory effect."  Greater

Birmingham Ministries, et al. v. Sec'y of State for the State of Ala., No. 18-

10151, at *39 (11th Cir. July 21, 2020).  State Defendants raised the need to

allege intentional conduct in their Motion, and Plaintiffs did not disagree;

they simply ignored the requirement altogether.  [Doc. 83-1 at 13.]  Thus, in

addition to the fact that the Eleventh Circuit applies a rational basis test in

Equal Protection challenges to facially neutral election laws, Plaintiffs have

made *no* allegations of intentional discrimination supporting their Equal

Protection claim.  Both facts are fatal to Count V.

## IV.    Election Day Receipt Deadline.

Plaintiffs' challenges to the Election Day Receipt Deadline for absentee ballots—under <u>Anderson-Burdick</u> (Count I) and Due Process (Count IV)—should be dismissed.  [Doc. 33 ¶¶ 135-136, 151-161.]  Regarding the burden on voters (Count I), Plaintiffs continue to make conclusory statements regarding the purported burden imposed by the challenged law on voters themselves.  [Doc. 96 at 32.] Plaintiffs presume a burden exists because ballots arriving after election day are rejected, [<u>id.</u>], but any deadline to return absentee ballots would leave some ballots rejected as untimely. Plaintiffs also make no attempt to distinguish between untimely <u>and</u> ineligible ballots and those that are just untimely.  And, Plaintiffs reference "other burdens" such as information costs of discerning the deadline and information about candidates up to Election Day, but those purported burdens exist whenever someone *chooses* to vote absentee.  [Doc. 96 at 33.]

In Count IV, Plaintiffs assert a facial procedural due process challenge to the Election Day Receipt Deadline.  When deciding a facial challenge to the constitutional adequacy of process, courts "look[] to the statute as written," not a party's description of how it might operate.  <u>J.R. v. Hansen</u>, 736 F.3d 959, 966 (11th Cir. 2013).  In so doing, courts consider a number of factors "to determine what process is due," including: the private interest affected; the risk of erroneous deprivation . . .; the probative value of additional or

substitute procedural safeguards; and the Government's interest, including fiscal and administrative burdens of additional process." Id., 736 F.3d at 966 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  These factors each weigh in the Secretary's favor.  See Doc. No. [83-1, pp.22-24.]

As shown above, while voting is a critical private interest, there is no constitutional right to vote by absentee ballot. McDonald, 394 U.S. at 807-08; Griffin v. Roupas, 385 F.3d 1128, 1130-31 (7th Cir. 2004).

Fatal to both the Counts I and IV claims, however, is that Plaintiffs' purported burdens do not outweigh Georgia's weighty and undisputed interests in timely election results and confidence in the electoral process. See [Doc. 83-1 at 23-26].  Plaintiffs do not even attempt to address these interests.  A receipt deadline ensures finality sooner; allows the timely and lawful administration of elections (including runoff elections)[5]; and reduces post-election voter fraud opportunities.  The Court therefore should dismiss the challenges to the Election Day Receipt Deadline in Counts I and IV.

## V.     Single Absentee Ballot Application.

---

[5] This includes the ability to finalize election results in time to have runoff absentee ballots printed and mailed to uniformed and overseas citizens in compliance with federal law.

Plaintiffs attack the fact that only some voters can submit one request for all absentee ballots in an election cycle under Anderson-Burdick (Count I) and the Twenty-Sixth Amendment (Count II).  [Doc. 33, ¶¶ 127-130, 132, 139-146.]  As Plaintiffs recognize, the only court to decide this precise issue is the Fifth Circuit in Texas Democratic Party v. Abbott, 961 F.3d 389 (5th Cir. 2020).  While not binding authority, Abbott's reasoning is compelling and far more apt than Plaintiffs' authority, which Plaintiffs concede address voter registration drives, petitions, and the like.  [See Doc. 83-1 at 16 n.10.].  See also Abbott, 2020 WL 2982937 at *14 (deciding a more restrictive law was constitutional because "qualified voters [could] still exercise the franchise").

Plaintiffs' Twenty-Sixth Amendment claim (Count II) completely ignores the actual text of the amendment, which, as recognized in Abbott, prohibits abridging the right to vote, not differing "*opportunities* to voters that are available to others based on age."  [Doc. 96 at 42 (emphasis added)]; see also Abbott, 961 F.3d at 409.  In addition to rewriting the amendment, allowing Plaintiffs' claim to proceed requires a wholesale reconceptualization of the amendment's heretofore well-known and well-understood purpose— extending voting rights to citizens of sufficient age to be called upon for national military service.  See generally Doc. No. [102-1, pp.11-13] (brief of *amici* Public Interest Legal Foundation and Landmark Legal Foundation).

Plaintiffs' Twenty-Sixth Amendment claim flies directly in the face of what the amendment both says as well as its effect.

## VI.   Postage.

It is axiomatic that, in order for a policy to impose a poll tax, it must first impose a tax.  Plaintiffs do not dispute the State Defendants' cited authority clarifying that a tax is something imposed by government for its benefit.  [Doc. 83-1 at 18-19.]  Nor do (or can) they argue that the State benefits from the USPS's collection of postage.  Beyond this definitional problem, any postage-related injury is not traceable to State Defendants, warranting dismissal of Counts I and III.  See Jacobson, 957 F.3d at 1206-07.

On Anderson-Burdick, Plaintiffs' claim fails for at least two clear reasons.  First, they concede all voting involves incidental costs—whether transportation to the polls, bus fare, or postage; indeed, postage may be the cheapest of the options.  Second, Plaintiffs' claim that one-time CARES Act money could purchase everyone a stamp says nothing about their prospective relief and facial attack—meaning that even if CARES Act funding is available (something Plaintiffs did not allege), the State would still need to provide funding for stamps for all voters in future elections, including those with stamps and the means to purchase them, which alone outweighs the incidental burden of the USPS's postage requirement.

## VII.   The Absentee Ballot Security Statute (O.C.G.A. § 21-2-385(a)).

Plaintiffs misrepresent that their own challenges to the Absentee

Ballot Security Statute are not facial challenges, [Doc. No. 96 at 28], but they

are: the Amended Complaint asks this Court to declare the statute itself

unconstitutional, [Doc. No. 33 at 78].  Plaintiffs must show that the statute

will always be applied in an unconstitutional manner.  Wash. State Grange,

552 U.S. at 455.[6]

The Court can and should dismiss Plaintiffs' claims regarding this

statute, which Plaintiffs challenge in Counts I (Anderson-Burdick) and VI

(First Amendment).  [Doc. No. 33, ¶¶ 137, 167-72.]  Both analyses apply the

same balancing test, and both weigh in the State's (and the statute's) favor.

On the question of burden on voters (Count I), Plaintiffs allege only

conclusory statements regarding the purported burden the law imposes on

---

[6] Plaintiffs' citations to Ga. Muslim Voter Project v. Kemp, 918 F.3d 1262, 1270 (11th Cir. 2019), and Martin v. Kemp, 341 F. Supp. 3d 1326, 1337 (N.D. Ga. 2018), which are the same cases, are unavailing.  Ga. Muslim Voter Project is not binding on the Eleventh Circuit. 11th Cir. R. 27-1(g).  The decision relied on authority involving warrantless searches, City of Los Angeles. v. Patel, 576 U.S. 409, 418 (2015), not elections like Wash. State Grange, which Patel cites to favorably.  The Martin opinion decided that the procedure in the challenged statute was facially inadequate.  Plaintiffs make no showing here, and Judge May did not decide that Wash. State Grange was inapplicable; instead she applied its analysis.  341 F. Supp. 3d at 1337.

voters themselves.  [Doc. No. 96 at 33-34 (citing [Doc. No. 33, ¶¶ 73, 76-78]).]
At best, the cited paragraphs contain the type of "mere conclusory
statements" that cannot provide a basis to overcome a motion to dismiss.
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Thus, Plaintiffs cite to no
allegation sufficient to establish an unconstitutional burden on voting.  This
is not a close call.

NGP's First Amendment claim (Count V) also fails to allege a
cognizable or meaningful burden on NGP.  Plaintiffs first fail to address the
analysis in the authority cited by the State Defendants.  See Knox v.
Brnovich 907 F.3d 1167 (9th Cir. 2018); Voting for Am., Inc. v. Steen, 732
F.3d 382 (5th Cir. 2013).  Neither Knox nor Steen turned on the defendants'
evidence.  Instead, they recognize that the physical act of collecting and
delivering a ballot *expresses* nothing—it is not expressive conduct protected
by the First Amendment.  In addition, the law does not prevent an NGP
agent from being with a voter throughout the whole process, which shows no
limitation on speech.  Other than stating the opposite in a conclusory
manner, Plaintiffs have chosen not to engage or explain their position at all.
Plaintiffs' conclusory allegations are not presumed to be true; indeed,
precedent holds the contrary.  Iqbal, 556 U.S. at 678.

Consequently, NGP appears to collapse its argument to one of associational rights.  [Doc. 96 at 39.]  Here too, NGP cites no factual allegation to support its claim and refers only to paragraphs in the Amended Complaint containing conclusory and legal statements.  [Id.]  Even Plaintiffs' authority, Meyer, acknowledges that while the First Amendment is implicated when a statute "limits the number of voices" involved in political speech, the concerns involving ballots are quite different from the petitions at issue there.  486 U.S. at 425, 427.

Further, on their Anderson-Burdick analysis, Plaintiffs ignore the State's interests and claim they do not exist.  [Doc. 96 at 34.]  Courts disagree.  Preventing voter fraud, maintaining voter confidence, and the heightened protection that are afforded to ballots all outweigh Plaintiffs' illusory burdens.  See, e.g., Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 194-200 (2008); Meyer v. Grant, 486 U.S. 414, 427 (1988).  As importantly, NGP concedes that its own conduct, which led to investigations into unlawful activity of individuals affiliated with it—along with recent voter fraud issues in other states—support upholding the Absentee Ballot Security Statute. Here too, Plaintiffs have failed to demonstrate that the State's interest in upholding absentee ballot security is not sufficiently strong to withstand their facial challenge.

-14-

## VIII. Section 208 of the Voting Rights Act of 1965.

Plaintiffs have shown no binding precedent to support their assertion that current Georgia law violates Section 208 of the Voting Rights Act. Georgia law has long provided that any "physically disabled or illiterate elector may receive assistance in preparing his or her ballot from any person of the elector's choice other than such elector's employer or the agent of such employer or an officer or agent of such elector's union." O.C.G.A. § 21-2-385(b). Section 208 provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. Voters with disabilities or who lack the ability to read or write thus can receive assistance from anyone of their choosing subject to the same limits in Section 208. There is no conflict between Georgia law and Section 208. As such, the statute is not preempted, and Count VII must be dismissed.

## IX.   Conclusion.

The Court should dismiss the Amended Complaint for the reasons expressed in State Defendants' briefing in support of the Motion.

Respectfully submitted this 24th day of July, 2020.

Christopher M. Carr
Attorney General
GA Bar No. 112505
Bryan K. Webb
Deputy Attorney General
GA Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
Charlene McGowan
Asst. Attorney General
Ga. Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Carey Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
**Robbins Ross Alloy Belinfante Littlefield LLC**
500 14th Street NW
Atlanta, GA 30318

Telephone:      (678) 701-9381
Facsimile:      (404) 856-3250

*Attorneys for State Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR**

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** was

prepared double-spaced in 13-point Century Schoolbook font, approved by the

Court in Local Rule 5.1(C).

<u>*/s/Josh Belinfante*</u>
Josh Belinfante