IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE NEW GEORGIA PROJECT, et al., | * * * | |
| Plaintiffs, | * * | |
| v. | * * | 1:20-CV-01986-ELR |
| BRAD RAFFENSPERGER, *in his official capacity as the Georgia Secretary of State and the Chair of the Georgia State Election Board*, et al., | * * * * * | |
| Defendants. | * * | |

**O R D E R**

Presently before the Court is "State Defendants' Motion to Stay Preliminary Injunction Pending Appeal." [Doc. 137]. For the reasons stated below, the Court denies Defendants' motion.

**I.    Background**

On August 31, 2020, the Court entered a preliminary injunction (hereinafter "August 31st Order"), enjoining Defendants[1] from enforcing O.C.G.A. § 21-2-386(a)(1)(F), the statute governing the Absentee Ballot receipt deadline in

---

[1] There are eighty-three (83) Defendants in this case, including various Georgia election officials and members of seventeen (17) county boards of elections. See Am. Compl. [Doc. 33].

Georgia (hereinafter "the Receipt Deadline"). [Doc. 134]. Additionally, the Court ordered Defendants, their officers, employees, and agents, and all persons acting in active concert or participation with Defendants, or under Defendants' supervision, direction, or control, to accept and count otherwise valid absentee ballots from qualified voters that are postmarked by Election Day, and arrive at their respective county's office within three (3) business days of Election Day by 7:00 p.m. [Id. at 69–70].

The State Defendants[2] now move this Court to stay the injunction pending appeal. [Doc. 137]. Having been fully briefed, this motion is now ripe for the Court's review.

## II. Legal Standard

Federal Rule of Civil Procedure 62(d) governs when a court may stay an injunction pending appeal.[3] See FED. R. CIV. P. 62(d). Rule 62(d) provides, in relevant part: "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend,

---

[2] According to the motion, the State Defendants requesting a stay of the August 31st Order are Secretary of State Brad Raffensperger and State Election Board ("SEB") Members Rebecca N. Sullivan, David J. Worley, Matthew Mashburn, and Anh Le. [Doc. 137]. However, as discussed *infra*, there is an open question as to Defendant Worley's inclusion in the appeal. [See Doc. 144-1]. Additionally, the County Defendants state in their response that they "do not oppose the Motion to Stay." [Doc. 143]. Thus, the Court will refer to Defendants collectively, unless otherwise noted.
[3] In their motion, State Defendants specify that they seek to stay the injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(c). [Doc. 137 at 15]. However, the Court notes that Rule 62(d), not Rule 62(c), sets forth the standard for when the district court may stay an injunction pending an appeal. See FED. R. CIV. P. 62(d).

modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Id. "A stay is not a matter of right, even if irreparable injury might otherwise result." Nken v. Holder, 556 U.S. 418, 434 (2009) (citing Virginian Railway Co. v. United States, 272 U.S. 658, 672 (1926)). "It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issu[ance] is dependent upon the circumstances of the particular case.'" Id. (internal citations omitted).

When determining whether to grant a stay, the Court must consider the following four (4) factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987). The movant bears a "heavy burden" and "must establish *each* of these four elements in order to prevail." Larios v. Cox, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (citing Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)) (emphasis in original); see also Nken, 556 U.S. at 433–34 (2009) ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.").

Additionally, "[a]lthough the first factor (i.e., a strong showing of likelihood of success on the merits) is generally the most important, the movant need not always show that [it] probably will succeed on the merits of [the] appeal." Gonzalez ex rel.

Gonzalez v. Reno, No. 00-11424, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000) (citing Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986)). "When the balance of the equities weighs in favor of granting the stay, the movant need only show a substantial case on the merits." Martin v. Kemp, No. 1:18-CV-4776-LMM, 2018 WL 8949298, at *1 (N.D. Ga. Oct. 30, 2018) (citing Larios, 305 F. Supp. 2d at 1337). However, "the more the balance of equities (represented by the other three factors) tilts in the opposing party's favor, the greater the movant's burden to show[] a likelihood of success on the merits." Id. (internal marks and citations omitted). Finally, the latter two (2) factors—harm to the opposing party and weighing the public interest—merge when the government is the opposing party, as is the case here. Nken, 556 U.S. at 435.

**III.   Discussion**

As noted above, State Defendants move this Court to stay the preliminary injunction pending appellate review. [Doc. 137]. The Court addresses each of the four (4) factors in turn, beginning with the first factor—likelihood of success on the merits.

    **A.   Likelihood of Success on the Merits**

In their motion, State Defendants raise three (3) main arguments with regards to their likelihood of success on the merits. First, Defendants argue that Purcell v. Gonzales, 549 U.S. 1 (2006), bars Plaintiffs' request for equitable relief, as does the

doctrine of laches. [Doc. 137 at 6–12]. Second, Defendants contend that Plaintiffs are unlikely to succeed on their claim that the Receipt Deadline unduly burdens the right to vote. [Id. at 12–17]. Finally, Defendants claim that Plaintiffs are unlikely to succeed on their procedural due process claim. [Id. at 17–20]. The Court addresses each argument in turn.

          1.     *Purcell* and laches do not bar equitable relief

The Court begins with Defendants' first argument. Defendants argue that pursuant to Purcell, 549 U.S. at 4–5, courts should hesitate to issue "orders that change election laws on the eve of an election" because such orders "threaten to undermine voter confidence in the integrity of the election and provide an incentive to remain away from the poll." [Id. at 6]. Additionally, Defendants argue that the doctrine of laches bars Plaintiffs' "last-minute challenge to longstanding election laws during or on the eve of elections." [Id. at 7]. Thus, Defendants argue a stay of the injunction is necessary. [Id.]

Upon review, the Court finds State Defendants' arguments unavailing. As an initial matter, the Court again reiterates that the undersigned "does not understand how assuring that all eligible voters are permitted to vote undermines the integrity of the election process. To the contrary, it strengthens it." [Doc. 134 at 66] (citing Martin v. Kemp, 341 F. Supp. 3d 1326, 1340 (N.D. Ga. 2018)).

Furthermore, the Court finds the circumstances of Purcell distinguishable from those in this case. Purcell concerned a last-minute election change in Arizona that threatened to cause widespread voter confusion. See 549 U.S. at 2–4. However, in the instant case, the undersigned's August 31st Order was issued more than two (2) months before the November 2020 election. Also, unlike the election change in Purcell, this Court's August 31st Order simply extends a procedural safeguard already available to a certain subset of Georgia absentee voters to all eligible absentee voters during these extraordinary times. [See Doc. 134 at 56–70]. Finally, federal district courts (including those of this district) regularly grant injunctive relief in election cases on a shorter timeline than is present here. See Democratic Nat'l Comm. v. Bostelmann, No. 20-CV-249-WMC, 2020 WL 1638374, at *16–18 (W.D. Wis. Apr. 2, 2020) (issuing a preliminary injunction five (5) days before the election in question); Georgia State Conference NAACP v. Georgia, No. 1:17-CV-1397-TCB, 2017 WL 9435558, at *6 (N.D. Ga. May 4, 2017) (issuing a preliminary injunction enjoining certain voter registration requirements and extending voter registration deadline approximately six (6) weeks before the election in question); Common Cause/Ga. v. Billups, 406 F. Supp. 2d 1326, 1377 (N.D. Ga. 2005) (issuing an order preliminarily enjoining the state's voter ID requirement approximately three (3) weeks before the election in question). Thus, the Court finds Defendants' argument based on Purcell to be unpersuasive.

Next, the Court turns to Defendants' laches argument. Laches "requires proof of three elements: (1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that the delay caused the defendant undue prejudice." Conagra, Inc. v. Singleton, 743 F.2d 1508, 1517 (11th Cir. 1984). Here, Defendants argue that all three (3) factors apply, and thus, the doctrine of laches bars Plaintiffs' request for injunctive relief. [Doc. 137 at 7–12].

The Court disagrees and finds that Defendants fail to satisfy each requirement.[4] Regarding the first element, the Court finds Defendants' characterization that Plaintiffs unduly delayed in bringing this action to be misguided. As noted in the Court's August 31st Order, Plaintiffs bring an as-applied challenge, meaning Plaintiffs are challenging the Receipt Deadline as applied to the November 2020 election due to the circumstances caused by COVID-19. [See Doc. 134 at 24–25]; see also Am. Compl. [Doc. 33]. Thus, Plaintiffs could not have brought this action "years earlier" as State Defendants' contend; in fact, Plaintiffs

---

[4] In their response, Plaintiffs argue that "laches serves as a bar only to the recovery of retrospective damages, not to prospective relief." [Doc. 144 at 16–17] (citing Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enterprises, 533 F.3d 1287, 1321 (11th Cir. 2008)). Because Plaintiffs are seeking prospective relief with regards to the November 2020 election, they argue that the doctrine of laches does not apply. [Id. at 17]. But whether laches applies to constitutional claims for prospective injunctive relief presents an open question of law. See Jacobson v. Lee, 411 F. Supp. 3d 1249, 1264-65 (N.D. Fla. 2019) ("It is not clear whether laches applies at all to claims for prospective relief from continuing constitutional violations."); Democratic Exec. Comm. of Fla. v. Detzner, 347 F. Supp. 3d 1017, 1026 (N.D. Fla. 2018) ("[I]t is not clear laches applies when a plaintiff seeks prospective relief for continuing constitutional violations."). However, the Court need not resolve that open question at this juncture, because Defendants fail to satisfy any of the three (3) perquisite elements necessary to invoke the doctrine of laches.

filed this case on May 5, 2020, only two (2) months after Governor Brian Kemp issued a public health state of emergency. See Compl. [Doc. 1]; [see also Doc. 134 at 9].

Regarding the second element, the Court finds that any delay was excusable. The Governor declared a public health emergency in Georgia on March 14, 2020, and Plaintiffs filed their motion for preliminary injunction on June 10, 2020, only one (1) day after the June 2020 primary. [See Docs. 1; 57; 134 at 9]. The Court finds this timeline to be reasonable.

Finally, the Court notes that Defendants have failed to establish the third element, that any delay caused them undue prejudice. Specifically, Defendants fail to demonstrate how any of the potential prejudices they identify are a result of the timing of Plaintiffs' suit. [See Doc. 137 at 7–12]. Accordingly, because Defendants fail to prove any of the three (3) necessary elements, the Court finds that laches does not bar Plaintiffs' request for injunctive relief.

> 2. <u>Defendants have not demonstrated a strong likelihood of success on Plaintiffs' right to vote claim</u>

Next, the Court turns to Defendants' argument regarding Plaintiffs' right to vote claim. In their motion for preliminary injunction, Plaintiffs alleged that the Receipt Deadline unconstitutionally burdens absentee voters' right to vote in light of the circumstances caused by COVID-19. [See Docs. 57, 58]. After reviewing the briefings and evidence presented, the undersigned agreed and granted injunctive

8

relief. [See Doc. 134 at 56–61]. In their motion, Defendants argue that the Court erred because: (1) Plaintiffs fail to establish a severe burden as required under the Anderson-Burdick test, and (2) the State's "important" interests outweigh any burden on Plaintiffs. [Doc. 137 at 13–17].

However, for reasons stated in the August 31st Order, the Court disagrees. When considering the constitutionality of an election law, the Court applies the framework set out in Anderson v. Celebrezze, 460 U.S. 780 (1983), as later refined in Burdick v. Takushi, 504 U.S. 428, 433 (1992). Pursuant to the Anderson-Burdick test, the Court must "weigh the character and magnitude of the burden the State's rule imposes on [the right to vote] against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997) (internal quotation marks omitted). "If the state election scheme imposes severe burdens on the plaintiffs' constitutional rights, it may survive only if it is narrowly tailored and advances a compelling state interest." Stein v. Alabama Sec'y of State, 774 F.3d 689, 694 (11th Cir. 2014) (internal marks and citation omitted). However, "when a state's election law imposes only reasonable, nondiscriminatory restrictions," then "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." Id. (internal citation omitted).

In their motion, Defendants argue that the Court applied the wrong standard because the Court found that the "burden imposed on *voters* by Georgia's current absentee ballot recipe deadline is severe." [Doc. 137 at 14] (citing Doc. 134 at 60) (emphasis added). Defendants contend that in applying the Anderson-Burdick test, the Court must consider the burden imposed on the right to *vote*, not the burden on individual *voters*. [Id.] Thus, Defendants argue the Court erred in its analysis regarding the severity of the burden.

The Court disagrees. When assessing the severity of the burden under Anderson-Burdick, the Supreme Court noted that courts must consider the effects of the restriction on the impacted population, i.e., the impacted voters. See Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 198 (2008) (noting that the "burdens that are relevant to the issue before [the Court] are those imposed on persons who are eligible to vote but do not possess a current photo identification that complies with the requirements [of the challenged statute]," and not the burden on all voters). Thus, the Court finds it applied the correct standard in evaluating the severity of the burden.

Having found that the Court applied the correct standard, the Court again concludes that the burden imposed by the Receipt Deadline is severe. As set forth in the August 31st Order:

> there is evidence that a record number of absentee ballot requests in Georgia will lead to a potentially substantial backlog, increasing the possibility that voters will receive their ballots on a later date. It has been established that more than 7,000 voters were disenfranchised by

>Georgia's June 2020 Primary Election ballot receipt deadline. According to Plaintiffs, these voters were disenfranchised for no error of their own, but due to Georgia's poor administration of absentee ballots and the policy they now challenge, the Receipt Deadline. Based on this evidence, the Court finds that burden imposed on voters by Georgia's current absentee ballot receipt deadline is severe.

[Doc. 134 at 59–60] (internal marks and citations omitted).

Turning to Defendants' second argument, that the State's "important" interests outweigh any burden on Plaintiffs, the Court disagrees. Although the Court once again acknowledges the State's important interests, for the reasons set forth in the August 31st Order, the Court finds that those interests do not outweigh the severe burden imposed by the Receipt Deadline. [See Doc. 134 at 60–61]; see also Bostelmann, 2020 WL 1638374 at *17 ("More to the point, the state's general interest in the absentee receipt deadline is not so compelling as to overcome the burden faced by voters who, through no fault of their own, will be disenfranchised by the enforcement of the law."). Accordingly, the Court finds that Defendants have not demonstrated a strong likelihood of success with regards to Plaintiffs' right to vote claim.

>3. <u>Defendants have not demonstrated a strong likelihood of success on Plaintiffs' procedural due process claim</u>

Finally, the Court addresses Defendants' argument regarding Plaintiffs' procedural due process claim. In their motion, Defendants argue that Plaintiffs "are unlikely to succeed on their procedural due process claim challenging the Election

Day Receipt Deadline in O.C.G.A. § 21-2-386(a)(1)(F)." [Doc. 137 at 17]. Specifically, Defendants argue that the three (3) Mathews v. Eldridge factors weigh in their favor; thus, they contend a stay is warranted. [Id. at 17–20].

However, the Court disagrees. When evaluating a due process challenge under the Mathews v. Eldridge balancing test, courts must consider three (3) factors: (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest by the procedures used and the probable value of any additional safeguards, and (3) the government's interest. 424 U.S. 319, 335 (1976). Here, the Court finds all three factors weigh in Plaintiffs' favor.

Addressing the first factor, as the Court previously explained in its August 31st Order, "the private interest at issue implicates an individual's right to vote and is therefore entitled to substantial weight." [Doc. 134 at 62] (internal citation omitted). As for the remaining two (2) Mathews v. Eldridge factors, for the reasons stated in the August 31st Order, the Court finds that the risk of erroneous deprivation is high; an extension of the deadline has probative value; and an extension, as required by the injunction, is not so burdensome as to outweigh the state-conferred right to vote through the absentee process. [See id. at 62–63]. Thus, the Court finds that Defendants have not carried their burden to demonstrate a strong likelihood of success on the merits regarding Plaintiffs' procedural due process claim.

In sum, the Court finds that Defendants have failed to establish a strong likelihood of success on any of their three (3) arguments.

**B.     Irreparable Injury**

Having determined that Defendants have not demonstrated a strong likelihood of success on the merits, the Court turns to the second factor in evaluating a request for a stay: irreparable injury.  Here, Defendants argue that that the administrative burdens of complying with the injunction so close to the election will lead to uncertainty and confusion, will delay certification of election results, and will impact the ability of voters to cast ballots in runoff elections.  [Doc. 137 at 20–21].

The Court disagrees and finds that the administrative burdens on the State do not constitute irreparable harm.  As the Court mentioned in its August 31st Order, the State already utilizes established procedures to accept absentee ballots from qualified voters after Election Day pursuant to the Uniformed Overseas Citizens Absentee Voting Act.[5]  Additionally, the Court finds that many of the "harms" Defendants identify are speculative.[6]  See Ga. Muslim Voter Project v. Kemp, 918

---

[5] Pursuant to O.C.G.A. § 21-2-386(a)(1)(G), overseas Georgia voters have an extended deadline of three (3) days after Election Day.

[6] As for any arguments regarding confusion, Plaintiffs argue that Defendants are creating more confusion by seeking a stay since the Court's injunction has received substantial public attention. Plaintiffs include an email from Defendant David Worley, a member of the SEB, who explicitly states that he "believes [an appeal] is a mistake and a waste of the State's time and resources, and will lead to confusion on the part of county election officials." [Doc. 144-1 at 1].  Thus, Defendant Worley states he "do[es] not believe the decision should be appealed," and "[is not] a party to the appeal."  [Id.]

F.3d 1262, 1267 (11th Cir. 2019) ("[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent."). In light of the foregoing, the Court finds that State Defendants have not met their burden in showing that they will suffer irreparable harm absent a stay.

### C. Balance of Harms and Public Interest

Finally, the Court turns to the remaining two (2) factors—balance of harms and weighing the public interest. As explained above, these two (2) factors merge when the government is the party seeking a stay. Nken, 556 U.S. at 435. Here, the Court finds both factors weigh against issuing a stay. First, the Court finds that Plaintiffs will be irreparably injured if the Court issues a stay of the preliminary injunction. As stated in the August 31st Order, "Plaintiffs will be forever harmed if they are unconstitutionally deprived of their right to vote." [Doc. 134 at 65] (internal citation omitted). Further, the Court has already determined that due to the circumstances caused by COVID-19, there is a high risk of absentee ballots being rejected in the upcoming election. See supra. Without injunctive relief, many absentee voters will be completely disenfranchised during the upcoming election through no fault of their own.

Second, the Court finds the public will be served by this injunction. As the Court noted in its August 31st Order, the public interest is best served by ensuring all eligible absentee votes are counted. [See Doc. 134 at 66]. This injunction ensures

that absentee voters who are unable to vote in person and "who receive their ballots shortly before Election Day are able to mail their ballots without fear that their vote will not count." [Id. at 62].[7]

## IV.   Conclusion

Accordingly, for the reasons stated above, the Court **DENIES** "State Defendants' Motion to Stay Preliminary Injunction Pending Appeal." [Doc. 137].

**SO ORDERED**, this 16th day of September, 2020.

_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia

---

[7] The Court notes that in their motion, State Defendants again argue that this Court lacks jurisdiction because: (1) Plaintiffs have failed to establish Article III standing and (2) the challenge to the Receipt Deadline implicates the political question doctrine. [Doc. 137 at 23–25]. However, for the reasons stated in the Court's August 31st Order, the Court disagrees. Again, the Court finds that Plaintiffs have sufficiently demonstrated they have standing, and that the issue presented does not raise a non-justiciable political question. [See Doc. 134 at 15–23].